1  Marc H. Cohen (State Bar No. 168773)
   mcohen@kirkland.com
2  Kirkland & Ellis LLP
   3330 Hillview Avenue
3  Palo Alto, CA 94304
   Telephone: (650) 859-7000
4  Facsimile: (650) 859-7500

5  Jeffrey L. Willian, Esq. (*pro hac vice*)
   Donna M. Welch, Esq. (*pro hac vice*)
6  Daniel C. Moore, Esq. (*pro hac vice*)
   Kirkland & Ellis LLP
7  300 N. LaSalle
   Chicago, IL 60654
8  Telephone: (312) 862-2425
   Facsimile: (312) 862-2200

9
   Attorneys for Plaintiffs
10

11                    **UNITED STATES DISTRICT COURT**

12                  **NORTHERN DISTRICT OF CALIFORNIA**

13                          **SAN JOSE DIVISION**

14  MONTEREY BAY MILITARY HOUSING,
    LLC, CLARK PINNACLE MONTEREY BAY          Case No. 5:14-CV-03953 BLF
15  LLC, CLARK MONTEREY PRESIDIO LLC,
    CALIFORNIA MILITARY COMMUNITIES           **NOTICE OF MOTION AND MOTION**
16  LLC, CLARK PINNACLE CALIFORNIA            **OF PLAINTIFFS TO DISSOLVE**
    MILITARY COMMUNITIES LLC and CLARK        **PRELIMINARY INJUNCTION**
17  IRWIN, LLC,                               **PURSUANT TO FEDERAL RULE OF**
                                              **CIVIL PROCEDURE 59(e) AND**
18             Plaintiffs,                    **MEMORANDUM OF POINTS AND**
                                              **AUTHORITIES THEREOF**
19        vs.

20  PINNACLE MONTEREY LLC, PINNACLE           DATE: January 29, 2015
    IRWIN LLC, AMERICAN MANAGEMENT
21  SERVICES CALIFORNIA INC., AMERICAN        TIME: 9:00 a.m.
    MANAGEMENT SERVICES LLC D/B/A
22  PINNACLE, GOODMAN REAL ESTATE,            COURTROOM: 3, Fifth Floor
    INC., GOODMAN FINANCIAL SERVICES,
23  INC., STANLEY HARRELSON and JOHN          JUDGE: Hon. Beth. L. Freeman
    GOODMAN,
24
               Defendants.
25

26

27  AND RELATED CROSS-COMPLAINT:

28

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

1   PINNACLE IRWIN, LLC and PINNACLE
2   MONTEREY, LLC,

3                   Plaintiffs,

4           vs.

5   CLARK REALTY CAPITAL, L.L.C., CLARK
6   PINNACLE MONTEREY BAY LLC, CLARK
    PINNACLE CALIFORNIA MILITARY
7   COMMUNITIES LLC, and DOES 1-25,
    INCLUSIVE,
8
                    Defendants.
9   AMERICAN MANAGEMENT SERVICES
    CALIFORNIA INC. AND AMERICAN
10  MANAGEMENT SERVICES LLC (D/B/A
11  PINNACLE),

12                  Counterclaimants,

13  v.

14  MONTEREY BAY MILITARY HOUSING LLC
15  AND CALIFORNIA MILITARY
    COMMUNITIES LLC
16
                    Counterdefendants.
17

18

19

20

21

22

23

24

25

26

27

28

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

1

## TABLE OF CONTENTS

2    INTRODUCTION ................................................................................................. 2

3    STATEMENT OF ISSUES ................................................................................ 3

4    STATEMENT OF FACTS ................................................................................. 4

5         A.    Fraud and Intentional Misconduct by the Property Managers at the
               Military Projects. ................................................................................... 6
6         B.    The State Court Enjoins Plaintiffs from Revoking the Property
               Manager's Agency. ............................................................................... 8
7         C.    Plaintiffs Discover Fraud and Intentional Misconduct at Fort Irwin.......... 9
          D.    Plaintiffs Appeal the State Court's Injunction and Amend Their
8               Complaint............................................................................................. 10

9    LEGAL STANDARD ....................................................................................... 11

10   ARGUMENT ..................................................................................................... 12

11   I.   CONTROLLING CALIFORNIA LAW FORECLOSES ANY
          LIKELIHOOD OF DEFENDANTS SUCCEEDING ON THE MERITS. .......... 12
12
          A.    Record Facts Further Show that the Property Manager's Agency is
13              Revocable.............................................................................................. 16
          B.    The Property Manager's Agency is not Coupled in Time with the
14              Pinnacle Minority Members' Membership Interests. ........................... 17
          C.    Nothing in the CP Operating Agreements Limits the Owners' Statutory
15              Power to Revoke the Property Manager's Agency. ............................. 17

16   II.  DEFENDANTS ALSO FAIL THE REMAINING THREE ELEMENTS
          REQUIRED FOR INJUNCTIVE RELIEF ......................................................... 19
17
          A.    The Property Manager Has An Adequate Remedy at Law and Thus
18              Cannot Show Irreparable Harm. .......................................................... 19
          B.    The Balance of Equities Sharply Tips in the Owner's Not the Property
19              Manager's Favor. ................................................................................. 20
          C.    An Injunction Forcing an Agent on an Unwilling Principal is Against
20              the Public Interest. ............................................................................... 21

21   III. THE STATE COURT'S CLEAR ERROR IS FURTHER EVIDENCED
          BY ITS FINDING OF UNSUPPORTED FIDUCIARY DUTIES......................... 22

22

23

24

25

26

27

28

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

                                        i                    Plaintiffs' Motion to Dissolve Preliminary Injunction
                                                             Monterey Bay Military Housing v. Pinnacle Monterey
                                                             CASE NO. 5:14-CV-03953 BLF

1

## Table of Authorities

2

**Cases**

3

*Alliance for the Wild Rockies v. Cottrell*,

4

   632 F.3d 1127 (9th Cir. 2011) ............................................................ 12, 20

5

*Balla v. Idaho State Bd. of Corr.*,

6

   869 F.2d 461 (9th Cir. 1989) ................................................................ 11

7

*Brooks v. GAF Materials Corp.*

8

   284 F.R.D. 352 (D.S.C. 2012) .............................................................. 11

9

*Calence v. Dimension Data Holdings*,

10

   222 Fed.Appx. 563 (9th Cir. 2007) ...................................................... 12, 19

11

*Communist Party v. 522 Valencia, Inc.*

12

   41 Cal. Rptr.2d 618 (Cal. Ct. App. 1995)............................................. 23

13

*Credit Suisse First Boston Corp. v. Grunwald*,

14

   400 F.3d 1119 (9th Cir. 2005) .............................................................. 11

15

*DISH Network Corp. v. F.C.C.*,

16

   653 F.3d 771 (9th Cir. 2011) ................................................................ 11, 13, 19

17

*FHR TB, LLC v. TB Isle Resort LP*,

18

   865 F. Supp.2d 1172 (S.D. Fla. 2011) ..................................................passim

19

*Gov't Guarantee Fund of Republic of Finland v. Hyatt Corp.*

20

   95 F.3d 291 (3rd Cir. 1996) .................................................................. 15

21

*Johnston v. Tampa Sports Auth.*,

22

   530 F.3d 1320 (11th Cir. 2008) ............................................................ 11, 12

23

*Lynch v. Cruttenden & Co.*,

24

   18 Cal. Rptr.2d 636 (Cal. Ct. App. 1993)............................................. 23

25

*National Viatical, Inc. v. Universal Settlements Intern., Inc.*,

26

   716 F.3d 952 (6th Cir. 2013) ................................................................ 12

27

*Nidec Corp. v. Victor Co. of Japan*,

28

   No. c05-0686 SBA, 2007 WL 4108092 (N.D. Cal. Nov. 16, 2007) .................. 11

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

*Oakland Raiders v. Nat'l Football League*

    32 Cal. Rptr.3d 266 (Cal. Ct. App. 2005) ................................................................. 23

*Oakland Tribune, Inc., v. Chronicle Publishing Co., Inc.*,

    762 F.2d 1374 (9th Cir. 1985) ................................................................................. 19

*Pacific Landmark Hotel, Ltd. v. Marriott Hotels, Inc.*,

    23 Cal. Rptr.2d 555 (Cal. Ct. App. 1993) ......................................................... passim

*Resolution Trust Corporation v. Bayside Developers*,

    43 F.3d 1230 (9th Cir. 1995) ................................................................................. 11

*Robinson v. Wix Filtration Corp*,

    599 F.3d 403 (4th Cir. 2010) ................................................................................. 12

*Smith v. Clark County Dist.*,

    727 F.3d 950 (9th Cir. 2013) ................................................................................. 12

*Stormans, Inc. v. Selecky*,

    586 F.3d 1109 (9th Cir. 2009) ............................................................................... 21

*Thayer Plymouth Ctr., Inc. v. Chrysler Motors Corp.*,

    63 Cal. Rptr. 148 (Cal. Ct. App. 1967) ................................................................. 19

*Winter v. Natural Res. Def. Council, Inc.*,

    555 U.S. 7 (2008) ................................................................................................. 12

*Woolley v. Embassy Suites, Inc.*,

    278 Cal. Rptr. 719 (Cal. Ct. App. 1991) .................................................... 18, 19, 23

**Statutes**

28 U.S.C. § 1292 ........................................................................................................ 11

Cal. Civ. Code. § 2356 ......................................................................................... 22, 23

Cal. Code Civ. Proc.§ 526 .......................................................................................... 22

**Other Authorities**

Wright & Miller, Fed. Prac. & Proc. Civ. § 2948.4 (3d ed. 2014) .......................... 22

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

ii

Plaintiffs' Motion to Dissolve Preliminary Injunction
Monterey Bay Military Housing v. Pinnacle Monterey
CASE NO. 5:14-CV-03953 BLF

**Rules**

Civ. L. R. 7-9 ................................................................................................................ 11

Fed. R. Civ. P., R. 54 ..................................................................................................... 11

Fed. R. Civ. P., R. 59 ...................................................................................... 4, 11, 12, 24

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

Plaintiffs' Motion to Dissolve Preliminary Injunction
Monterey Bay Military Housing v. Pinnacle Monterey
CASE NO. 5:14-CV-03953 BLF

## MOTION AND NOTICE OF MOTION

PEASE TAKE NOTICE that on January 29, 2015 at 9:00 a.m., or as soon thereafter as the matter can be heard, in the courtroom of the Honorable Beth L. Freeman located at 280 South First Street San Jose, California 95113, Plaintiffs will, and hereby do, move for an order granting Plaintiffs Motion to Dissolve Preliminary Injunction Pursuant to Federal Rule of Civil Procedure 59(e).  The Motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities Below, the Declaration(s) of Daniel C. Moore and the Proposed Order filed herewith.

Pursuant to Federal Rule of Civil Procedure Rule 59(e) Plaintiffs respectfully request this Court vacate the December 26, 2012 Order of the Monterey Superior Court and dissolve the preliminary injunction.

DATED:  September 21, 2014

Respectfully submitted,
KIRKLAND & ELLIS LLP


/s/ *Marc H. Cohen*
Marc H. Cohen (State Bar No. 168773)
mcohen@kirkland.com
Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304
Telephone: (650) 859-7000
Facsimile: (650) 859-7500

Jeffrey L. Willian, Esq. (*pro hac vice*)
Donna M. Welch, Esq. (*pro hac vice*)
Daniel C. Moore, Esq. (*pro hac vice*)
Kirkland & Ellis LLP
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2425
Facsimile: (312) 862-2200

Attorneys for Plaintiffs

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

1

Plaintiffs' Motion to Dissolve Preliminary Injunction
Monterey Bay Military Housing v. Pinnacle Monterey
CASE NO. 5:14-CV-03953 BLF

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs respectfully request that the Court dissolve a prior order of the State Court that prevents the Plaintiffs, as principals and owners, from revoking the agency of their property manager, Defendant American Management Services California, Inc. ("AMSC" or the "Property Manager"). Plaintiffs (effectively owned 49% by the U.S. Army, 35% by Clark Realty Capital and 16% by individuals associated with the Defendants AMS and AMSC) own, develop and manage the privatized military housing at Fort Irwin and the Presidio at Monterey ("Irwin Project" and "Monterey Project", collectively, the "Projects"). While these separate legal entities that are affiliated with AMSC thus have an indirect membership interest in Plaintiffs, AMSC itself holds no interest (direct or indirect) in Plaintiffs or in the Projects, other than serving as the Property Manager in exchange for fees.

Plaintiffs contracted with the Property Manager to act as their agent to provide property management services at these Projects for a 50-year term, subject to automatic termination for "theft, fraud or other knowing or intentional misconduct." Based on the sworn declarations of former Property Manager employees, many only recently obtained, the Property Manager and its employees have engaged in a long pattern of fraud and intentional misconduct in managing the Projects. As alleged in the Fourth Amended Complaint, this intentional misconduct includes (among other things) falsifying project documents relating to the time taken to respond to resident work orders, and closing open work orders prior to completing the work (all to increase the Property Manager's incentive fee compensation), creating potential life-safety risks for military families.

Plaintiffs, acting through their managing members and with the full support of the Army, sought to terminate the agency of their Property Manager at both Projects, consistent with California statute and the state's strong policy against forcing a principal to continue to employ a disloyal agent. However, in a preliminary injunction ruling, the California State Court found (while acknowledging that its ruling would be settled on appeal) that the Property Manager had an agency coupled with an interest and that Plaintiffs did not have the statutory power to revoke the agency,

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

Plaintiffs' Motion to Dissolve Preliminary Injunction
Monterey Bay Military Housing v. Pinnacle Monterey
CASE NO. 5:14-CV-03953 BLF

and thus enjoined Plaintiffs from "revoking the PMAs" without Court approval.  It is undisputed, however, that the Property Manager has no equity or other interest in the Projects.  Rather, its sole role is to act as property manager in exchange for fees.  The State Court's ruling is thus plainly in error as it directly contradicts well-settled California law that holds that for an agency coupled with an interest to exist,  the agent must have a vested interest different and apart from the agent contract. *Pacific Landmark Hotel, Ltd. v. Marriott Hotels, Inc.* ("*Pacific Landmark*"), 23 Cal. Rptr.2d 555, 557 (Cal. Ct. App. 1993) ("[N]either defendants nor the court below could identify any "interest . . ." other than to assert [manager] has an interest through "Marriott and its affiliates' " interests.  Such, however, does not recognize the separate corporate entities to this business transaction.").

The need to remove this unwanted agent is particularly acute here.  The State Court's injunction order has been on appeal to the California Court of Appeal for 21 months without ruling, and that appeal now has been mooted by removal to this Court.  All the while, the Plaintiffs have been forced to entrust property management duties to a disloyal agent who has committed multiple acts of fraud, and according to their own former employees, continued to commit this fraud even while this lawsuit and injunction were pending.  What is worse, this fraud, which includes closing open work orders prior to completing needed work on the housing of military families, creates a palpable life-safety risk for soldiers and their families. Ex. 1, 9/19/2014 P. Cramer Decl. ¶¶ 6–7. The Army has zero tolerance for fraud, accordingly it has approved the filing of this litigation and fully supports removal of the Property Manager from its bases as soon as allowed.  *Id.* at ¶¶ 3–4, 8; Ex. 2, 12/12/13 J. Calcara Dep. Tr. 54:17-25.  Delay in removing the Property Manager creates further unfair prejudice given the inherent difficulty in detecting and remedying fraud.  Permitting the the Property Manager to continue to manage the Army facilities creates the potential destruction of important evidence, which Pinnacle allowed in systematic fashion by destroying hard copy work orders at Fort Irwin, the Presidio of Monterey, Fort Belvoir and Fort Benning.

## STATEMENT OF ISSUES

On December 26, 2012, the Monterey Superior Court entered an Order granting a preliminary injunction prohibiting Plaintiffs from exercising their statutory right to revoke the agency of Defendant American Management Services California, Inc.  This ruling was based on a

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

3

Plaintiffs' Motion to Dissolve Preliminary Injunction
Monterey Bay Military Housing v. Pinnacle Monterey
CASE NO. 5:14-CV-03953 BLF

1  clear error of law and Plaintiffs respectfully request this Court reconsider the State Court's Order

2  and dissolve the preliminary injunction in accordance with Federal Rule of Civil Procedure 59(e)

3  and applicable California and federal law.

4  **STATEMENT OF FACTS**

5      Plaintiffs Monterey Bay Military Housing, LLC ("MBMH") and California Military

6  Communities LLC ("CMC") (collectively, the "Owners" or "Plaintiffs") own and operate privatized

7  housing at the Presidio of Monterey and Fort Irwin, both U.S. Army bases located in California.[1]

8  The Owners retained Defendant AMSC as a property manager at the Projects pursuant to separate

9  (but substantially similar) Property Management Agreements.  *See* Ex. 7, 10/01/2003 Monterey Bay

10  Military Housing, LLC Property Management Agreement ("Monterey PMA"); Ex. 8, 03/01/2004

11  California Military Communities, LLC Property Management Agreement ("Irwin PMA") (together

12  "PMAs").  The terms of each PMA clearly state that the Property Manager is the Owners' agent and

13  a manager only, and has no other interest in the Military Projects.  Exs. 7 and 8, PMAs §10

14  ("Manager is engaged independently in the business of property management and acts hereunder as

15  an independent contractor.  ***Nothing contained in this Agreement shall be construed as creating a***

16  ***partnership, joint venture, or any other relationship between the parties to this Agreement***,")

17  (emphasis added); *id.* §22 ("This Agreement . . . constitutes the entire agreement between Owner[s]

18  and manager with respect to the management and operation of the Project").

19      The Property Manager is owned and controlled by its parent company, Defendant American

20  Management Services LLC, which does business as Pinnacle ("AMS").  Stan Harrelson, the former

21  CEO of AMS, has admitted that the Property Manager is a manager only, and holds no equity

22

23  [1]   The United States Army has an interest in this lawsuit through its indirect ownership of Plaintiffs
       and has certain approval rights pursuant to contract, but is not a party to this lawsuit. The Army
24     authorized this litigation, which seeks the removal of AMSC as property manager and the
       recovery of damages for their wrongful acts, and has accordingly approved the litigation budgets
25     and monies spent in connection with this suit. *See* Ex. 2, 12/12/2013 J. Calcara Dep. Tr. 34:18-
       36:23; *see also* Ex. 3, 1/27/2014 P. Cramer Dep. Tr. 334:20-335:5; Ex. 4, 1/28/2014 M. Connor
26     Dep. Tr. 430:14-18. Additionally, the Army fully supports the prompt removal of AMSC as
       Property Manager. *See* Ex. 5, 9/27/2012 Letter Agreement between MBMH and U.S. Army
27     (authorizing removal of Property Manager by U.S. Army); Ex. 6, 9/27/2012 Letter Agreement
       between CMC and U.S. Army (same); *see also* Ex. 2, 12/12/2013 J. Calcara Dep. Tr. 54:11–25
28     ("fraud does not have scalability in the federal government.").

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

4

Plaintiffs' Motion to Dissolve Preliminary Injunction
Monterey Bay Military Housing v. Pinnacle Monterey
CASE NO. 5:14-CV-03953 BLF

interest in the military Projects. Ex. 9, 7/16/2012 S. Harrelson Dep. Tr. 13:3–8 (Q. "And am I also correct that AMS California has no ownership interest in the Monterey Bay project, apart from its property management agreement?  A. ***AMS of California, Inc. is not a named owner, equity owner of the project*** ….") (emphasis added).  Defendants have made the same admission in discovery responses. Ex. 10, 10/22/2012 Defs.' Resps. to Pls. RFAs 1–4 ("Defendants "admit" that "American Management Services California, Inc. has no ownership interest in Monterey Bay Military Housing, LLC.").

Plaintiffs are managed by Clark Pinnacle Monterey Bay LLC and Clark Pinnacle California Military Communities LLC, respectively (collectively, the "CP Companies").  *See* Ex. 11, MBMH Operating Agreement, § 1; Ex. 12, CMC Operating Agreement, § 1.  The CP Companies each have a 70% majority member, and a 30% minority member.  The majority member in each is a Clark Realty Capital affiliate.  The minority members, each a special purpose entity of which certain Pinnacle executives are members, are called "Pinnacle Monterey LLC" and "Pinnacle Irwin LLC" ("Pinnacle Minority Members").  *See* Ex. 13, CP Monterey Operating Agreement § 1; Ex. 14, CP Irwin Operating Agreement § 1; Ex. 9, 7/16/2012 S. Harrelson Dep. Tr. 10:17–12:12; *id.* at 16:8–25. AMSC—the Property Manager—does ***not*** hold equity in Plaintiffs and is ***not*** a member in Pinnacle Monterey or Pinnacle Irwin.  Stan Harrelson, who also is one of the members of the Pinnacle Minority Members, explained that the equity investment was intentionally decoupled from the Property Manager's agency because they wanted to limit the risk-exposure of their equity investment.[2] Ex. 15, 10/23/2012 S. Harrelson Dep. Tr. 75:16–76:15 ("[T]here are risks associated with the management company that we think had no bearing on the equity position held at the Pinnacle Monterey level.").[3]

---

[2]  The State Court, in holding that the conglomerate "Pinnacle" (defined as four distinct entities) held an agency coupled with an interest thus erroneously ignored the separate legal entities, which are distinct from the manager entity that acts as Plaintiffs' agent.  *See Pac. Landmark*, 23 Cal. Rptr.2d at 557.

[3]  For the Court's reference, Plaintiffs have attached structure charts setting forth the legal structure at the Projects as Exhibits 16 and 17.

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

5

Plaintiffs' Motion to Dissolve Preliminary Injunction
Monterey Bay Military Housing v. Pinnacle Monterey
CASE NO. 5:14-CV-03953 BLF

**A.**     **Fraud and Intentional Misconduct by the Property Managers at the Military Projects.**

Affiliates of Plaintiffs own and operate related housing Projects at Fort Benning, Georgia, and Fort Belvoir, Virginia.  Another AMS subsidiary (American Management Services East LLC ("AMSE")) was hired as property manager at those bases pursuant to substantially similar property management agreements to those at the California Projects.  In fall 2009, outside auditors were engaged on behalf of the Benning Owner, after AMSE fired its top three management employees at Fort Benning.  The audit helped to uncover a series of widespread frauds and intentional misconduct by AMSE and other AMS employees at Fort Benning, including falsification of project documents relating to work orders. [4]   As later discovered, similar fraud and misconduct by AMS and AMSE employees occurred at Fort Belvoir. [5] These findings of widespread work order fraud (intended to increase the property manager's incentive fee compensation) were corroborated by investigations conducted by retired U.S. Colonel Robert Zebrowski and an internal investigation by Defendants' own human resources investigator Patrick Fulcher.  Ex. 34, 5/16/2011 R. Zebrowski Report; Ex. 35, 1/20/2011 P. Fulcher Interview Notes.

The Benning and Belvoir Owners initiated litigation against AMS and AMSE in Georgia, and have removed the property manager AMSE at both Projects.  The Georgia State Court recently granted partial summary judgment for the Benning and Belvoir Owners on, holding that "[t]he evidence presented was incontrovertible; Pinnacle and its employees committed knowing and intentional misconduct" and that "[e]ach instance of misconduct serves as an *independent* ground under which the PMAs have terminated."  Ex. 36, 3/20/2014 Order Granting Partial Summ.

---

[4]   For example, seven former AMS and AMSE employees admitted to personally changing work orders from fails to passes, often at the direction of management, witnessed the same or knew that the practice was base-wide.  Ex. 18, 10/18/2011 V. Bussey Aff.; Ex. 19, 10/18/2011 C. Cassidy Aff.; Ex. 20, 10/24/2013 D. Guinard Aff.; Ex. 21, 10/20/2011 J. Mackey Aff.; Ex. 22, 11/10/2011 E. Peters Aff.; Ex. 23, 10/19/2011 C. Yance Aff.; Ex. 24, 7/19/2013 D. White Aff.

[5]   Former AMS and AMSE employees at Fort Belvoir likewise admitted to personally changing work orders from fail to passes, often at the direction of senior management, witnessed the same or knew that the practice was base-wide.  *See* Ex. 25, 1/22/2013 K. Alesi Aff.; Ex. 26, 1/22/2013 G. Boomer Aff.; Ex. 27, 8/2/2013 K. Centers Aff.; Ex. 28, 1/22/2013 J. Correa Aff.; Ex. 29, 8/02/2013 K. Larkey Aff.; Ex. 30, 8/10/2012 S. Ruggiero Aff.; Ex. 31, 4/02/2013 D. Smith Aff.; Ex. 32, 2/15/2012 P. Zyzyk Aff.; Ex. 33, 1/22/2013 W. Gotay Aff.

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

6

Plaintiffs' Motion to Dissolve Preliminary Injunction
Monterey Bay Military Housing v. Pinnacle Monterey
CASE NO. 5:14-CV-03953 BLF

1  J. (emphasis in original).  AMS and AMSE immediately appealed that partial grant of summary

2  judgment, and that appeal is pending.

3         After the discovery of fraud and intentional misconduct at Fort Benning and Fort Belvoir,

4  the Owners initiated audits of the Property Manager at Monterey and Irwin.  No doubt

5  anticipating that the Owners would find similar fraud at Monterey and Irwin—as was uncovered at

6  Fort Benning and Fort Belvoir—in June 2011, the Pinnacle Minority Members tried to **unilaterally**

7  amend the provisions of the Monterey and Irwin PMAs.  Ex. 37, 5/13/2011 Pinnacle Amendment

8  Letters.  The proposed unilateral amendments would have permitted the Property Manager to "cure"

9  its own fraud, and would have prevented the PMAs from automatically terminating in the event the

10 Property Manager or its employees or agents commits "theft, fraud, or other knowing or intentional

11 misconduct."  *Compare* Exs. 7 and 8, PMAs §18.1(c); *with* Ex. 37, 5/13/2011 Pinnacle Amendment

12 Letters.  To protect the Projects, Plaintiffs filed suit in the Monterey Superior Court seeking

13 declarations that the proposed unilateral amendments violated the fiduciary duties that the Pinnacle

14 Minority Members owed as managers of the CP Companies and were void under California law,

15 which prevents a party from immunizing itself from its own fraud.  *See* 4th Amend. Compl. ¶¶53–

16 63.

17        Subsequently, as alleged by Plaintiffs, the audit uncovered evidence of fraud and intentional

18 misconduct at the Monterey Project, including but not limited to falsification of work order data.

19 For example, Joshua Merrill, who held a variety of positions with the maintenance department,

20 testified that "[d]uring the time that Michelle Calloway was the Community Director, she also

21 told us that we had to change data to increase the pass percentages" and that he "believed that

22 [he] had to change the data in order to keep [his] job."  Ex. 38, 12/12/2011 J. Merrill Decl. ¶¶ 5–

23 7.  Mr. Merrill corroborated that the falsification of work order data was done at the direction of

24 senior staff of the Property Manager.  *E.g.*, Ex. 39, 6/15/2012 J. Merrill Dep. Tr. 246:11–23; *Id.*

25 249:7–250:16.  As discussed below, Plaintiffs have only recently discovered evidence that this

26 same pattern and practice of fraud and misconduct has occurred at Fort Irwin, and was ongoing

27 even **after** this lawsuit was filed and the State Court ruling was on appeal.  *See, e.g.,* Ex. 45,

28 8/5/2014 A. Arias Decl.; Ex. 46, 8/5/2014 T. Spears Decl.

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

7

Plaintiffs' Motion to Dissolve Preliminary Injunction
Monterey Bay Military Housing v. Pinnacle Monterey
CASE NO. 5:14-CV-03953 BLF

**B.    The State Court Enjoins Plaintiffs from Revoking the Property Manager's Agency.**

In March 2012, in light of the fraud and other knowing and intentional misconduct discovered at Monterey, Plaintiffs filed a motion asking the State Court to clarify that Plaintiffs, consistent with strong California policy allowing a principal to revoke an agency regardless of cause, were permitted to remove the Property Manager under the PMA.  Ex. 40, 3/28/2012 Pls. Mot. for Partial Dissolution of Prelim. Inj.[6]  Defendants later moved for a preliminary injunction enjoining Plaintiffs from revoking the Property Manager's agency.  Ex. 42, 10/2/2012 Defs. Ex Parte App. to Show Cause.

After oral argument on November 15, 2012, the State Court entered the preliminary injunction enjoining statutory revocation of the agency, finding that "Pinnacle" (defined by the State Court to include Pinnacle Monterey LLC, Pinnacle Irwin LLC, AMS, and the Property Manager AMSC) had an irrevocable agency coupled with an interest and thus Owners did not have a statutory right to revoke AMSC's agency.  The State Court went further, holding that "even if Pinnacle does not have an agency coupled with an interest in the PMAs, Clark [defined by the State Court to include seven separate legal entities, each with different contractual and other duties] … is enjoined from revoking the PMAs because Clark owes Pinnacle a fiduciary duty."  Ex. 43, 12/26/2012 Order Granting Prelim. Inj.  In addition, the State Court held that "Pinnacle" would be irreparably harmed by revocation of the Property Manager's agency.  *Id.* at ¶ 3.  At argument, prior to issuing its order, the State Court explained:

> I often think that my job is merely deciding who is going to be the appellant as we move forward, and I find myself perhaps seduced, as [was the] trial court in *Pacific Landmark*, by the complexity of the arguments and the relationships; and it seems that the provisions [in the Clark Pinnacle Operating Agreements] that initially established the agency, as we've talked about in Section 3.15(a)(3) [providing that the Projects "shall enter into one or more property management agreements…with AMSC (in the case of the Irwin Project) or "Pinnacle Realty Management Company" (in the case of MBMH)], is something that means AMSC does not stand alone as an agent.

---

[6]   The State Court had previously entered a vague injunction preventing Plaintiffs from "tak[ing] actions that are based on their contention that the disputed provisions of the [PMAs] have not been adjusted."  Ex. 41, 12/28/2011 Order.  Out of an abundance of caution, Plaintiffs asked the State Court to clarify that this did not enjoin Plaintiffs from exercising their statutory revocation powers under California Civil Code § 2356.

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

Plaintiffs' Motion to Dissolve Preliminary Injunction
Monterey Bay Military Housing v. Pinnacle Monterey
CASE NO. 5:14-CV-03953 BLF

1    It seems to me that it is an agency coupled with an interest.  But even if it's not an
     agency coupled with an interest, there is — there has to be some kind of fiduciary
2    duty here when you have a minority partner who is being threatened with being
     removed in such a way that its only access to compensation is going to end, that
3    there's something much more going on here than just a simple contract.  So that's
     what I think.

4

5    Ex. 44, 11/15/2012 Hr'g Tr. (79:25–81:4).

6        **C.**    **Plaintiffs Discover Fraud and Intentional Misconduct at Fort Irwin.**

7            In the past few months, numerous former employees of the Property Manager at Fort Irwin

8    have provided sworn testimony that they personally falsified project data relating to work orders,

9    including marking as "completed" or "pass" work orders where the work had not been completed (or

10   even started).  Disturbingly, these witnesses establish that this falsification of work order data has

11   been ongoing—even during the pendency of the State Court's injunction.  For example, Alanso

12   Arias, a maintenance technician who worked at the Irwin Project from October 2011 to August 2013

13   (*after* the filing of the present lawsuit and entry of the preliminary injunction), stated that Wes

14   Campbell, the Maintenance Director, told him "to just bring the work orders to the office and write

15   on them that they were completed -- even though the work was not done" and that "I knew it was

16   wrong that open work orders were being closed out when the work wasn't done, but I did what I was

17   told to do because I was worried about losing my job." Ex. 45, 8/5/2014 A. Arias Decl. ¶¶ 2, 4–5.

18   Similarly, Timothy Spears, who worked at the Irwin Project between April 2004 and April 2012

19   (again after this lawsuit had commenced) stated that Wes Campbell instructed him to enter false

20   times on work orders in an effort "to have 95% or more of the work orders pass … even though the

21   times were not correct."  Ex. 46, 8/5/2014 T. Spears Decl. ¶¶ 2–4.  And while the closing of work

22   orders under false times or when the work had never even been started has occurred recently, it

23   stretches back to the inception of the Irwin Project, as sworn to by former Maintenance Supervisor

24   and Facilities Manager, Harold Hernandez:

25       Based on [Community Director] Rick Wimer's directions, I arbitrarily entered times
         and dates into the system for hundreds or more work orders in 2004, to make them
26       meet the correct time parameters.  Jennifer Fraser showed me how to go into the
         system and change the dates and times to make them pass.  It took me weeks,
27       working nights and weekends, to enter the data to make the work orders pass.  I felt
         this was wrong, but I did what Rick Wimer told me I was expected to do.  Wimer said
28       you will do what you have to do or you won't have a future here.

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

9

Plaintiffs' Motion to Dissolve Preliminary Injunction
Monterey Bay Military Housing v. Pinnacle Monterey
CASE NO. 5:14-CV-03953 BLF

Ex. 47, 6/10/2014 H. Hernandez Decl. ¶¶ 2, 4.  In addition, while the hard copy work orders used by the Property Manager's staff would perhaps be the best evidence (except for the ones that had falsified times on them) to compare with electronic records to understand the full extent of the fraud committed, Mr. Wimer, one of Pinnacle's most senior managers at Irwin, who had instructed employees to falsify data, also allegedly permitted the wholesale destruction of all hard copy work orders in 2007.  Ex. 48, 6/26/14 Defs.' Supp. Resp. to PMK Topics 3-5, 4 ("The boxes [hard copy work orders] on the pallet were then put in a dumpster.").[7]  Thus, for the nearly 18 months since entry of the State Court's December 26, 2012 Order, the Monterey and Irwin owners have been forced to continue to employ an agent that they wish to terminate, while that agent has continued to engage in fraud that harms the Projects and puts the lives of soldiers and their families at risk.

### D.    Plaintiffs Appeal the State Court's Injunction and Amend Their Complaint.

A notice of entry of the injunction was served on January 8, 2013.  Ex. 51, 1/8/2013 Notice of Entry of Order Granting Prelim. Inj.  Plaintiffs timely appealed the injunction to the California Court of Appeal on January 24, 2013.  Ex. 52, 1/24/2013 Notice of Appeal.  The appeal was fully briefed as of November 1, 2013.  On August 25, 2014, the Court of Appeal issued an Oral Argument Waiver Notice, and on August 27, 2014 Plaintiffs filed their Request for Oral Argument.  *See* Ex. 53, 8/25/14 Oral Arg. Waiver Notice and Ex. 54, 8/27/2014 Req. for Oral Arg.  When the case was removed on September 2, the appeal was mooted.  For nearly two years now as a result of the preliminary injunction, the Owners have suffered a defalcating Property Manager that has posed and continues to pose grave financial and life-safety risks to the Owners and military families at both the Monterey and Irwin Projects.

---

[7]   Pinnacle has destroyed hard copy work orders at the other Military Projects on a massive scale as well. *See* Ex. 61, 7/20/2012 L. Dudney Decl.; Ex. 49, 9/12/2011 Hr'g Tr. 310 (testimony Mike Rouen, AMS's Director of Military Housing, that hard copy work orders for Fort Belvoir were "discarded or lost" and in any event "don't exist").  There is substantial evidence that Mike Rouen, along with Stan Harrelson, initiated and approved of this work order fraud in order to inflate the incentive fee earned by AMSC and AMSE. *See e.g.*, Ex. 50, 2/12/2004 Email from S. Harrelson to M. Rouen and R. Mauzy; Ex. 32, 2/15/2012 P. Zyzyk Aff. ¶ 7 (stating that Mike Rouen told her to "do 'what is in the best interest of Pinnacle'" when she confronted him about her having been instructed by her management "to falsify work order data in order to increase the pass percentage.").

## LEGAL STANDARD

1
2    Upon removal, a district court should dissolve any preliminary injunction issued by the State
3    Court that was the product of clear legal error.  *See Johnston v. Tampa Sports Auth.*, 530 F.3d 1320,
4    1322 (11th Cir. 2008) (holding district court abused discretion in failing to dissolve preliminary
5    injunction issued by State Court prior to removal on grounds of misapplying state law).  A motion
6    pursuant to Rule 59 is the appropriate procedure for review and dissolution of erroneous State Court
7    judgments by a district court post-removal.[8]  *See Resolution Trust Corporation v. Bayside*
8    *Developers*, 43 F.3d 1230, 1237–1238 (9th Cir. 1995) ("In all cases removed to the district court
9    after judgment has been entered by a State Court, the parties may file motions to alter, modify or
10   open the judgment. . . the motions we envision are those in the nature of proceedings under Federal
11   Rule of Civil Procedure 59 (e)"); *see also Brooks v. GAF Materials Corp.* 284 F.R.D. 352, 356
12   (D.S.C. 2012) ("[A] party may file a motion to alter or amend a State Court judgment made prior to
13   removal under Rule 59(e) which must be served no later than twenty-eight days after the district
14   court's entry of the State Court judgment as its own.").

15    "To warrant a preliminary injunction, [the movant] must demonstrate that it meets all four of
16   the elements of the preliminary injunction test."  *DISH Network Corp. v. F.C.C.*, 653 F.3d 771, 776
17   (9th Cir. 2011).  Thus, in federal court, Defendants bear the burden of proving (1) a ***likelihood*** of
18   success on the merits of its claims; (2) a ***likelihood*** that it will suffer irreparable harm in the absence

19   ──────────────
20   [8]    Plaintiffs do not seek reconsideration pursuant to Rule 54 and Civil Local Rule 7-9 thus does not
         require Plaintiffs to seek leave of court in this instance.  Civil Local Rule 7-9 only applies to
         motions to "reconsider" "interlocutory orders" and "does not apply to final judgments."  *Nidec*
21       *Corp. v. Victor Co. of Japan*, No. c05-0686 SBA, 2007 WL 4108092, at *2 (N.D. Cal. Nov. 16,
         2007).  "Motions for reconsideration of judgments are properly brought pursuant to Federal Rule
22       of Civil Procedure 59(e)." *Id.*

23       The preliminary injunction entered by the State Court is a judgment as that word is used in the
         Federal Rules of Civil Procedure.  *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119,
24       1124, n.6 (9th Cir. 2005) ("Rule 59(e) applies to '[a]ny motion to alter or amend a judgment,'
         and under Rule 54(a), a judgment is defined to include 'any order from which an appeal lies.'
25       ***Because 28 U.S.C. § 1292(a)(1) establishes appellate jurisdiction over an appeal from a***
         ***preliminary injunction, a preliminary injunction order is a "judgment[.]"***") (emphasis added
26       and citation omitted); *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 466-67 (9th Cir. 1989)
         ("The word judgment as used in the Federal Rules of Civil Procedure is defined in Rule 54(a). A
27       judgment includes a decree and any order from which an appeal lies. Thus, the word "judgment"
         encompasses final judgments and ***appealable interlocutory orders.***") (emphasis added and
28       citations omitted).

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

of injunctive relief; (3) that "a balance of hardships tips **sharply**" in its favor; and (4) that any injunction is supported by the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (emphasis added); *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (reversing grant of preliminary injunction and holding Ninth Circuit's prior preliminary injunction standard to be "too lenient"). If a movant fails to prove any of the four elements, a preliminary injunction shall not issue. *Calence v. Dimension Data Holdings,* 222 Fed.Appx. 563, 566 (9th Cir. 2007) ("The district court employed the correct legal standard and was not required to reach the likelihood of success on the merits where it determined that there was no evidence of irreparable harm.").

Pursuant to Rule 59(e), a district court may dissolve a State Court's injunction upon a showing of "(1) an intervening change in the controlling law; (2) new evidence that was not available at the time of the ruling, or (3) that there has been a clear error of law or a manifest injustice." *Robinson v. Wix Filtration Corp,* 599 F.3d 403, 407 (4th Cir. 2010); *see also Johnston*, 530 F.3d at 1324-25; *National Viatical, Inc. v. Universal Settlements Intern., Inc.*, 716 F.3d 952, 956–957 (6th Cir. 2013) (dissolving injunction granted by State Court after removal to federal court because movant had failed to show likelihood of success on the merits and irreparable harm); *Smith v. Clark County Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) (finding "district court did not abuse its discretion by reconsidering its prior order" when it determined it had "a clear error of law" by not applying controlling precedent). Here, there has been both a clear error of law and manifest injustice as well as the development of new evidence of ongoing fraud.

## <u>ARGUMENT</u>

## I.   CONTROLLING CALIFORNIA LAW FORECLOSES ANY LIKELIHOOD OF DEFENDANTS SUCCEEDING ON THE MERITS.

At its heart, this motion involves a "narrow question of pure law" that can be fully answered by reviewing one governing contract at each Project (the nearly identical PMAs) and dispositive California law. *Pac. Landmark.* 23 Cal. Rptr.2d at 557. The PMAs make it clear that the Property Manager has been retained as an agent and manager only, and *Pacific Landmark* holds that such an

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

agency is always revocable.  *Id.* [9]  For this reason, it is impossible for AMSC to show a likelihood of success on its claims that it holds an irrevocable agency, and an injunction should not issue.  *FHR TB, LLC v. TB Isle Resort LP*, 865 F. Supp.2d 1172, 1178 (S.D. Fla. 2011).  ("[t]he issue here is not whether [Property Manager] is likely to prevail on a breach of contract claim, the issue here is whether [Property Manager] is likely to prevail on its argument that its agency relationship with [the Owners] is irrevocable"); *see also* 9/2/2014 Defs.' Counterclaims 3-4, Docket No. 12.  Because AMSC cannot show a modicum, let alone a likelihood of success, this Court need not examine the remaining elements required for injunctive relief; an injunction is permissible only if a movant satisfies **all four** elements under federal law.  *See DISH Network*, 653 F.3d at 776.

In prior briefing, Defendants have argued that the 30% membership interests held by the Pinnacle Minority Members can somehow be coupled with the agency held by the separate legal entity serving as the Property Manager to create an irrevocable agency in the Property Manager. *E.g.*, Ex. 42, 10/2/2012 Defs.' *Ex Parte* Appl. for Order to Show Cause re Prelim. Inj. and TRO. However, the Pinnacle Minority Members (neither of which is a party to the PMAs) are separate legal entities from the Property Manager, specifically created to hold the equity held by certain parent AMS investing officers.  What is more, while parent AMS does business as "Pinnacle" and has several affiliates, each are distinct legal entities and there simply is not, as a matter of undisputed fact, a legal entity called "Pinnacle."  *See* Ex. 55, 11/18/2005 D. Krull Email to L. Sperry and M. Rouen (Email from AMS's general counsel David Krull, explaining that "[T]here is no such thing as 'Pinnacle'—it is incorrect to say we are an affiliate of 'Pinnacle' - 'Pinnacle' is a dba only."). Defendants' argument as accepted by the State Court, which depends on conglomerating multiple and distinct entities under a "Pinnacle" banner, contravenes dispositive case law that holds there can be no agency coupled with an interest where the legal entity selected as property manager does ***not***

---

[9]    Whether the agency created by the PMAs can be revoked by the Owners under Cal. Civ. Code § 2356 is governed by California law; the Projects are located in California and the PMAs both contain choice-of-law provisions selecting California law as the governing law.  *See* Exs. 7 and 8, PMAs §24.1.  Whether or not an injunction should issue is governed by the federal procedural law.   *See FHR*, 865, F. Supp.2d at 1191 ("While [state] law applies to the terms of the [management agreement], federal procedural law governs the Court's interpretation and application of the injunction standards.").

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

13

Plaintiffs' Motion to Dissolve Preliminary Injunction
Monterey Bay Military Housing v. Pinnacle Monterey
CASE NO. 5:14-CV-03953 BLF

hold any vested interest.  *Pac. Landmark*, 23 Cal. Rptr.2d at 563.  As *Pacific Landmark* states, for strong policy reasons, the fact that affiliated entities hold the interest does not change the analysis or outcome.  *Id.; see also FHR*, 865 F. Supp.2d at 1198.

*Pacific Landmark,* controlling precedent here*,* involved the equity investments in a hotel made by Marriott Hotels affiliate, SDHI, and the 60-year property management contract the hotel held with property management agent MHI, a separate Marriott affiliate.  *Pac. Landmark*, 23 Cal. Rptr.2d at 557-58.  The managing agent, MHI, claimed that the management agreements were irrevocable because MHI had an agency coupled with an interest as stipulated in the management contract.  *Id.* at 558.  The trial court concluded that "Marriott and its affiliates" together held an agency and an interest in the hotels.  *Id.* at 559.  The trial court stated:  "[The owners'] argument was focused upon the fact that we should just focus this on the one tree, that is, MHI, and ignore the balance of it.  I chose in this case to look at the forest and take a look at the entire transaction."  *Id.*[10]

The Court of Appeal reversed.  Specifically it held that the trial court's focus on the "forest" was erroneous:  "As the trial court noted, it was looking at the forest and not the tree.  The narrow issue presented, however, concerned only the tree MHI."  *Id.* at 563.  The court went on to find that there was no basis to conclude that MHI, the "separate affiliate of Marriott carefully selected as the contracting parties for the Management Agreements," had an interest in the subject matter of the agency:

> The bottom line … is that ***neither defendants nor the court below could identify any "interest" of MHI in the Hotel or point to any document involved in the transaction which memorialized such an interest***, other than to assert MHI has an interest through "Marriott and its affiliates'" interests.  Such, however, does not recognize the separate corporate entities to this business transaction.

*Pac. Landmark*, 23 Cal. Rptr.2d at 562-63 (emphasis added).  Of course, Defendants are making this same substantive—and erroneous—argument as the Marriott affiliates did in *Pacific Landmark*.

Federal courts have fully endorsed this *Pacific Landmark* holding.  *See FHR*, 865 F. Supp.2d at 1198; *see also Gov't Guarantee Fund of Republic of Finland v. Hyatt Corp.* 95 F.3d 291, 305–6

---

[10]   The State Court here admitted that it too was "seduced" by this "forest" argument. Ex. 44, 11/15/2012 Hr'g Tr. 80:2–4 ("I find myself perhaps seduced, as [the] trial court in *Pacific Landmark*, by the complexity of the arguments and the relationships."

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

14

Plaintiffs' Motion to Dissolve Preliminary Injunction
Monterey Bay Military Housing v. Pinnacle Monterey
CASE NO. 5:14-CV-03953 BLF

(3rd Cir. 1996).  In *FHR*, the question was whether a district court could enjoin a property owner from revoking the agency of its manager under New York state law.[11]  In that case, the manager (Fairmont) entered into a hotel management agreement that granted a Fairmont affiliate several interests in the hotel, including rights of first offer and first refusal to purchase the hotel.  *FHR*, 865 F. Supp.2d at 1188.  In a detailed opinion, the district court explained that the manager's agency was revocable because the legal entity that was appointed manager by the management agreement did not hold any interest in the project.  *Id.* at 1198 ("Even if a Fairmont *affiliate . . .*  had a present vested interest in the hotel, that interest would not make Fairmont's agency irrevocable.").  *Id.*  The district court thus denied the injunction, holding that Fairmont's "agency relationship is not coupled with the interest required to make it irrevocable, and, as a matter of law, may be revoked at the will of the principal."  *Id.* at 1199.

Notably, the provisions of the management agreements relied on by the *Pacific Landmark* and *FHR* courts in concluding that the manager's agency was revocable also are present in the PMAs between the Owners and the Property Manager.  For example, all three contracts contain an "entire agreement clause" stating that there are no other agreements governing the manager's agency.  *See* Exs. 7 and 8 , PMAs §22 ("This Agreement . . . constitutes the entire agreement between Owner[s] and Manager with respect to the management and operation of the Project"); *see also Pac. Landmark*, 23 Cal. Rptr.2d at 562-63; *FHR* 865 F. Supp.2d at 1199.  And the *Pacific Landmark* management agreement shares a provision with the PMAs that expressly states that the manager was retained as a manager *only*:

> Manager is engaged independently in the business of property management and acts hereunder as an independent contractor.  ***Nothing contained in this Agreement shall be construed as creating a partnership, joint venture, or any other relationship between the parties to this Agreement***, or as requiring Manager to bear any portion of losses arising out of or connected with ***ownership*** or operation of the Project.

*See* Exs. 7 and 8, PMAs §10 (emphasis added); *see also Pac. Landmark*, 23 Cal. Rptr.2d at 557.  Thus the PMAs expressly absolve the Property Manager from any risk or benefit associated with an

---

[11]   As the district court noted, New York law is substantially similar to California law on the issue of a principal's power to revoke an agency.  *FHR,* 865 F. Supp.2d at 1195.

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

1   equity interest.    Read in concert, these provisions make clear that the Property Manager's

2   relationship with the Owners under the PMAs is as an agent only, and the Property Manager has no

3   other rights or interests.[12]

4           In addition, in both *Pacific Landmark* and *FHR*, the managers had a stronger (but ultimately

5   unsuccessful) argument than the Property Manager has here, because unlike the PMAs here, those

6   management agreements ***expressly stated*** that they created an agency coupled with an interest.  *Pac.*

7   *Landmark*, 23 Cal. Rptr.2d at 557-58; *FHR*, 865 F. Supp.2d at 1182.   The PMAs contain no

8   equivalent statements.

9           **A.      Record Facts Further Show that the Property Manager's Agency is**
            **Revocable.**

10          If the Court looks beyond the dispositive contract documents, further evidence from

11  Defendants confirms that the Property Manager's agency is not coupled with any interest.

12  Defendants admitted in sworn discovery responses that AMSC, the sole Property Manager, has no

13  ownership interest in the Owners or the Military Projects. Ex. 10, 10/22/2012 Defs.' Resp. to Pls.'

14  Req. for Admis. [Nos. 1-4] (Defendants "admit" that "American Management Services California,

15  Inc. has no ownership interest in Monterey Bay Military Housing, LLC.").   Defendants also have

16  admitted that the Pinnacle Minority Members are not the property managers at the Military Projects.

17  *See* Ex. 56, 10/24/2012 J. Carrosino Dep. Tr. 37:11-14 (Deposition of AMS Chief Financial Officer

18  John Carrosino:  "Q: Can we agree that Pinnacle Monterey LLC and Pinnacle Irwin LLC are not the

19  property managers at the Monterey and Irwin projects?  A: I would agree with that statement.").

20          Indeed, the former CEO of AMS testified that the Pinnacle Minority Members' equity was

21  intentionally decoupled from AMSC's agency—through use of separate legal entities—in order to

22  insulate the equity interest from the Property Manager's risk.  *See* Ex. 15, 10/23/2012 S. Harrelson

23  Dep. Tr. 76:9-12 ("[T]here are risks associated with the management company that we think had no

24  bearing on the equity position held at the Pinnacle Monterey level.").  The *Pacific Landmark* court

25  _____

26  12   Under the PMAs, the Property Manager receives fees paid for its management services.  The law
         provides that such fees do not create an agency coupled with an interest.  *Woolley v. Embassy*
27       *Suites, Inc.*, 278 Cal. Rptr. 719, 726 (Cal. Ct. App. 1991) ("Monetary compensation, in whatever
         form it may take, does not create a power coupled with an interest so as to make the agency
28       irrevocable "); *Pac. Landmark*, 23 Cal. Rptr.2d at 563; *FHR*, 865 F. Supp.2d at 1212.

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

16                  Plaintiffs' Motion to Dissolve Preliminary Injunction
                    Monterey Bay Military Housing v. Pinnacle Monterey
                    CASE NO. 5:14-CV-03953 BLF

identified such risk diversification into separate legal entities as a key fact in finding the managing agent did not hold an interest:

> For business reasons, Marriott chose to have the Management Agreements drafted only between MHI and Owners. . . We assume one of the purposes of these separate corporate entities was to insulate Marriott from liability . . . It is well recognized that the law permits the incorporation of businesses for the very purpose of isolating liabilities among separate entities. ***Since society recognizes the benefits of allowing persons and organizations to limit their business risks through incorporation, sound public policy dictates that disregard of those separate corporate entities be approached with caution.***

*Pac. Landmark*, 23 Cal. Rptr.2d at 562-63.

## B. The Property Manager's Agency is not Coupled in Time with the Pinnacle Minority Members' Membership Interests.

Under California law, to create an agency coupled with an interest, the agency and interest must also be coupled ***in time***. *Pac. Landmark*, 23 Cal. Rptr.2d at 562. Here, the Property Manager's agency is not coupled in time with the creation of the interest held by the Pinnacle Minority Members. At the Irwin Project, the Pinnacle Minority Member's membership interest was created more than nine months before the Property Manager was retained as an agent. *Compare* Ex. 14, 5/21/2003 CP Irwin Operating Agreement (reflecting effective date of May 21, 2003), *with* Ex. 8, 3/01/2004 Irwin PMA (reflecting execution date of March 1, 2004). Similarly, at the Monterey Project, the Pinnacle Minority Member's membership interest has an effective date of October 30, 2001—nearly two years before the Property Manager was retained as an agent. *Compare* Ex. 13, 10/30/2001 CP Monterey Operating Agreement (stating that it became effective on October 30, 2001), *with* 10/01/2003 Ex. 7, Monterey PMA (dated October 1, 2003). Thus, because there is no such concurrency in time, the Property Manager cannot be deemed to have an agency coupled with an interest.

## C. Nothing in the CP Operating Agreements Limits the Owners' Statutory Power to Revoke the Property Manager's Agency.

In prior briefing, Defendants have argued that certain contractual ***rights*** held by the Pinnacle Minority Members under the CP Operating Agreements limit the Owners' ***power*** to revoke the Property Manager's agency. Specifically, Defendants claim that terminating the PMAs is a "Major Decision" requiring the Pinnacle Minority Member's consent because it amounts to (i) a conveyance

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

17

Plaintiffs' Motion to Dissolve Preliminary Injunction
Monterey Bay Military Housing v. Pinnacle Monterey
CASE NO. 5:14-CV-03953 BLF

or disposition of a major asset pursuant to section 3.1(b)(3)(A) of the CP Operating Agreements, or (ii) an amendment of the PMAs pursuant to section 3.1(b)(3)(E) of the CP Operating Agreements.

Both of these arguments are meritless and were previously rejected by the Georgia Court with respect to substantially similar provisions involving the Owner entities at Fort Benning and Fort Belvoir. [13] Section 3.1(b)(3)(A) only applies to dispositions of substantial assets of "the Company," defined as Clark Pinnacle Monterey Bay LLC and Clark Pinnacle California Military Communities LLC. Neither of those entities are parties to the PMAs, and the PMAs are not "assets" of any party; they are contracts by which the Owners pay fees to the Property Manager. The law is clear that such fees do not create an irrevocable agency. *Woolley v. Embassy Suites, Inc.*, 278 Cal. Rptr. 719, 726 (Cal. Ct. App. 1991) ("Monetary compensation, in whatever form it may take, does not create a power coupled with an interest so as to make the agency irrevocable."). And further, section 3.1(b)(3)(E) of the CP Operating Agreements only applies to amendments of the PMAs; it explicitly states that it does not apply to enforcement of the PMAs' termination provisions. Section 3.1(b)(3)(E).

More fundamentally, even if Defendants' arguments about their contractual ***rights*** were valid (and they are not), they could not prevent the exercise of the Owners' statutory ***power*** to revoke the PMAs. *Woolley*, 278 Cal. Rptr. at 724 ("It is a cardinal principle of agency law that a principal who employs an agent always retains the power to revoke the agency[.] Although the termination cannot be prevented by the agent, the agent's remedy for wrongful termination is damages, as in any other breach of contract action."); *FHR* 865 F. Supp.2d at 1195 (noting the "sharp distinction between a principal's ***power*** to revoke an agency outside the terms of the contract and the principal's ***rights*** under the contract") (emphasis in original). The Pinnacle Minority Members' contractual rights are not before this Court on this motion; rather, the injunction improperly restrains the Owner's ***statutory revocation power***, which exists independent of and supersedes any contractual right.

---

[13] Defendants raised these same arguments in opposition to Plaintiffs' Motion for Summary Judgment. *See* Ex. 57, 2/17/2014 Opp'n Br. at 4. The Georgia Court rejected these arguments, holding that the admitted misconduct by Pinnacle employees automatically terminated the PMAs. Ex. 36, 3/20/2014 Order Granting Partial Summ. J.

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

18

Plaintiffs' Motion to Dissolve Preliminary Injunction
Monterey Bay Military Housing v. Pinnacle Monterey
CASE NO. 5:14-CV-03953 BLF

## II.   DEFENDANTS ALSO FAIL THE REMAINING THREE ELEMENTS REQUIRED FOR INJUNCTIVE RELIEF.

### A.   The Property Manager Has An Adequate Remedy at Law and Thus Cannot Show Irreparable Harm.

While the Court need not undergo this analysis (because Defendants cannot show any likelihood of success that AMSC holds an irrevocable agency), Defendants similarly fail the remaining three elements of the preliminary injunction test and thus cannot make *any* of the four showings required for injunctive relief.  *DISH Network*, 653 F.3d at 776; *see also Calence,* 222 Fed.Appx. at 566.

The second element necessary for injunctive relief is not met because the only harm that will be suffered by *any* party or entity upon the revocation of AMSC's agency is the loss of AMSC's fees, and that is adequately remedied by money damages.  *Woolley*, 278 Cal. Rptr. at 728; *FHR*, 865 F. Supp.2d at 1212; *Thayer Plymouth Ctr., Inc. v. Chrysler Motors Corp.*, 63 Cal. Rptr. 148, 152 (Cal. Ct. App. 1967); *Oakland Tribune, Inc., v. Chronicle Publishing Co., Inc.*, 762 F.2d 1374, 1376 (9th Cir. 1985) (holding newspaper's alleged injury of lost circulation and revenue involved purely monetary harm measurable in damages and did not rise to level of irreparable injury which would justify granting preliminary injunction.).  In *Woolley*, the management contract set forth the fee percentage and the number of years remaining on the contract.  The court noted that the agent also had a "track record" that could be used to project future fees.  Given that lost fees could reasonably be calculated, there was no "irreparable harm" to be remedied through injunctive relief.  278 Cal. Rptr. at 728-29.

This case is indistinguishable from *Woolley* on this point because Defendants have admitted that they can calculate the fees the Property Manager might have earned as damages from termination of the PMAs.[14]  Defendants have in fact specifically calculated the "base fees" and "incentive fees" that the Property Manager expected to receive from services provided at the

---

[14]   Similarly, the court in *FHR* found that revoking the manager's agency would not cause irreparable harm because Fairmont's COO admitted on cross examination that Fairmont tracked the values of the projected management fees and related goodwill on its balance sheets.  *FHR*, 865 F. Supp.2d at 1189.

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

19

Plaintiffs' Motion to Dissolve Preliminary Injunction
Monterey Bay Military Housing v. Pinnacle Monterey
CASE NO. 5:14-CV-03953 BLF

Monterey and Irwin Projects.  *See* Ex. 58, 11/06/2012 Declaration of T. Guleserian ¶¶ 8-9.  Stan Harrelson, the CEO of the AMS, testified that he has calculated the exact amount of fees that the Property Manager would lose if its agency is revoked.  *See* Ex. 15, 10/23/2012 S. Harrelson Dep. Tr. 83:3-84:25.

**B.    The Balance of Equities Sharply Tips in the Owner's Not the Property Manager's Favor.**

Under Ninth Circuit precedent, in order for a movant to obtain a preliminary injunction they must show that "a balance of the hardships tips ***sharply***" in its favor.  *Alliance for the Wild Rockies* 632 F.3d at 1138 (emphasis added).  On the contrary, the equities tip sharply (if not reside completely) in the Owners' favor.  The Owners do not trust or want AMSC to continue to perform property management services at Monterey or Irwin.  The Army likewise supports the prompt removal of AMSC at both Monterey and Irwin, believing it to be in the best interest of the Army and its soldiers. Ex. 1, 9/19/2014 P. Cramer Decl.  ¶ 8 ("As the Army's official decision marker on these issues relating to this litigation, it is my belief that prompt removal of AMSC is in the best interest of the Army and of its soldier-residents at Monterey and Irwin.").  Not only does the Army have a zero tolerance for fraud, but it has a sharp concern for the life-safety risk presented to its soldiers and their families by the conduct of Pinnacle.  *See id.* at ¶¶ 6–7; Ex. 5, 9/27/2012 Letter Agreement between MBMH and U.S. Army (authorizing removal of Property Manager by U.S. Army); Ex. 6, 9/27/2012 Letter Agreement between CMC and U.S. Army (same); *see also* Ex. 2, 12/12/2013 J. Calcara Dep. Tr. 54:11–25 ("fraud does not have scalability in the federal government.").

What is more, fraud by its nature is difficult to detect and remedy.  This is especially true where, as here, Defendants have shown a tendency to destroy, cover up and fail to produce key evidence.  Defendants have admitted to regularly destroying hard copy work orders. *E.g.* Ex. 48, 6/2620/14 Defs. Supp. Resp. to PMK Topics 3-5, 4 ("The boxes [hard copy work orders] on the pallet were then put in a dumpster."); Ex. 49, 9/12/2011 Hr'g Tr. 310 (testimony Mike Rouen, AMS's Director of Military Housing, that hard copy work orders for Fort Belvoir were "discarded or lost" and in any event "don't exist"). In the Georgia litigation, when confronted with hiding documents, Defendants were forced to admit in open court that "Defendants … without good or

1    reasonable cause, have failed to comply with those discovery requests including producing

2    documents in a timely manner." Ex. 59, 12/12/2012 Am. Ga. Super. Ct. Order.  When Defendants

3    still failed to produce critical documents that implicated them in fraud, the Georgia Court ordered

4    harsh sanctions, finding that "Pinnacle has engaged in a willful pattern and practice of failure to

5    comply with its discovery obligations" and that "Pinnacle has failed to comply with this Court's

6    Orders of 12/12/12 as amended and 5/15/13 as reflected in the evidence received by this Court."  Ex.

7    60, 10/30/2013 Ga. Super. Ct. Order ¶ 1.  "The Court finds that Pinnacle's misconduct was willful

8    and prejudicial to the Plaintiffs."  *Id*. at ¶ 2.  Thus there is a strong case to be made that Plaintiffs and

9    the Army need to take property management functions away from Defendants as soon as possible.  If

10   Plaintiffs wrongly do so, Defendants have a claim for money damages.

### C.    An Injunction Forcing an Agent on an Unwilling Principal is Against the Public Interest.

The State Court's preliminary injunction is contrary to the public interest because it saddles the Owners, the Army and military families with an unwanted agent that has engaged (and continued to engage) in fraud and intentional misconduct.  If "the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction."  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009) (reversing overbroad preliminary injunction as an abuse of discretion). Here, innocent third parties, specifically the service members and their families who reside at the Projects, are detrimentally affected by the continued agency of the Property Manager.   These military families are not just being deprived of honest property management services, but are subject to known life-safety issues as a result of the Property Manager's dereliction of duty.  Ex. 1, 9/19/2014 P. Cramer Decl. ¶ 6 ("As the Army's official decision marker on issues relating to this litigation, it is my belief that the closing of open work orders without work being completed creates potential life and safety issues for residents.").  Furthermore, the continued presence of the Property Manager continues to obstruct the Owners' ability to detect (and thus remedy) the full scope of AMSC's misconduct and resulting harm.

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

21                    Plaintiffs' Motion to Dissolve Preliminary Injunction
Monterey Bay Military Housing v. Pinnacle Monterey
CASE NO. 5:14-CV-03953 BLF

The public interest element of the preliminary injunction analysis also has been described as "another way of inquiring whether there are *policy considerations* that bear on whether the order should issue." Wright & Miller, Fed. Prac. & Proc. Civ. § 2948.4 (3d ed. 2014). "The public interest may also be declared in the form of a statute." *Id.* ("[s]tatutes [which] prohibit the issuance of a preliminary injunction … support deferring judicial action until a decision has been reached on the merits"). *Id.* Here, California has made an express legislative determination to codify the public interest in not having an undesired agent forced upon an unwilling principal. Cal. Civ. Code. § 2356(a)(1) ("Unless the power of an agent is coupled with an interest in the subject of the agency, it is terminated by … [i]ts revocation by the principal."). California statutory law additionally is firm that "[a]n injunction cannot be granted … [t]o prevent the breach of a contract the performance of which would not be specifically enforced[.]" Cal. Code Civ. Proc. § 526(b)(5); *see also FHR*, 865 F. Supp.2d at 1179 ("The notion of requiring a property owner to be forcibly partnered with an operator it does not want to manage its property is inherently problematic and provides support for the general rule that a principal usually has the unrestricted power to revoke an agency."); *Woolley*, 278 Cal. Rptr. at 727. ("courts wish to avoid the friction and social costs which result when the parties are reunited in a relationship that has already failed, especially where the services involve mutual confidence and the exercise of discretionary authority.").

## III.   THE STATE COURT'S CLEAR ERROR IS FURTHER EVIDENCED BY ITS FINDING OF UNSUPPORTED FIDUCIARY DUTIES.

Beyond the legally erroneous ruling that the Property Manager has an agency coupled with an interest, the State Court ruled that "even if" there is no irrevocable agency, "all persons or entities in active concert or participation with Clark, is enjoined from revoking the PMAs because *Clark [defined as seven distinct entities] owes Pinnacle [defined as four distinct entities] a fiduciary duty*." Ex. 43, 12/26/2012 Order at ¶ 2 (emphasis added).

The use of the defined terms "Clark" and "Pinnacle" grossly misconstrues the relationship among the *eleven distinct entities* subsumed within those overbroad definitions, many of which have no contractual or other relationship with each other. For example, there is no contractual or legal

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

1    authority for the proposition that Clark Monterey LLC owes Pinnacle Irwin LLC any fiduciary duty,

2    but this is the result of the State Court's clearly erroneous holding.

3        Similarly, Plaintiffs have found no cases under state or federal law (and Defendants, in

4    numerous rounds of briefing similar issues, have cited no such cases) holding that a principal, like

5    the Owners, owes an agent, like the Property Manager, *any* fiduciary duty.  To thus find such a

6    broad existence of a fiduciary duty from "Clark" to "Pinnacle" is contrary to law, and a form of

7    impermissible "reverse corporate veil-piercing."  "[T]he alter ego doctrine is a doctrine that is used

8    to prevent a corporation from using its statutory separate corporate form as a shield from liability

9    only where to recognize such would defeat the rights and equities of third persons; *it is not a*

10   *doctrine that allows the corporate entity to disregard its own incorporation.*"  *Pac. Landmark,* 23

11   Cal. Rptr. at 563 (emphasis added);  *Communist Party v. 522 Valencia, Inc.,* 41 Cal. Rptr.2d 618,

12   626 (Cal. Ct. App. 1995) ("Parties who determine to avail themselves of the right to do business by

13   means of the establishment of a corporate entity must assume the burdens thereof as well as the

14   privileges.").

15       Such a holding also ignores the strict standards needed to show the existence of a fiduciary

16   duty.  *Lynch v. Cruttenden & Co.,* 18 Cal. Rptr.2d 636, 640 (Cal. Ct. App. 1993) (stating fiduciary

17   relationships arise from contracts or arise from facts demonstrating the formation of a confidential

18   relationship and are "created where a person reposes trust and confidence in another person and the

19   person in whom such confidence is reposed obtains control over the other person's affairs.");

20   *Oakland Raiders v. Nat'l Football League* 32 Cal. Rptr.3d 266, 273 (Cal. Ct. App. 2005)

21   ("[f]iduciary duties arise [only] in certain technical, legal relationships.").

22       Thus, the State's Court's fiduciary duty holding should not impact the power of the Owners

23   to terminate its agency relationship with the Property Manager. *Woolley*, 278 Cal. Rptr. at 724

24   ("Save in the case of an agency coupled with an interest, a principal has the power to revoke an

25   agent's authority at any time[.]") (emphasis in original); Cal. Civ. Code § 2356(a) ("Unless the

26   power of an agent is coupled with an interest … it is terminated by … [i]ts revocation by the

27   principal.").

28

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

23

Plaintiffs' Motion to Dissolve Preliminary Injunction
Monterey Bay Military Housing v. Pinnacle Monterey
CASE NO. 5:14-CV-03953 BLF

1

<u>CONCLUSION</u>

2          For the foregoing reasons, the State Court's preliminary injunction prohibiting the Owners

3  from revoking the Property Manager's agency at the Military Projects was based on a clear error of

4  law and further should be reevaluated in light of new evidence.  Accordingly, Plaintiffs respectfully

5  request that this Court dissolve that injunction pursuant to Rule 59.

6

7

8  DATED:  September 19, 2014                    Respectfully submitted,
                                                KIRKLAND & ELLIS LLP

9

10                                              /s/ *Marc H. Cohen*

11                                              Marc H. Cohen (State Bar No. 168773)
                                                mcohen@kirkland.com
12                                              Kirkland & Ellis LLP
                                                3330 Hillview Avenue
13                                              Palo Alto, CA 94304
                                                Telephone: (650) 859-7000
14                                              Facsimile: (650) 859-7500

15                                              Jeffrey L. Willian, Esq. (*pro hac vice*)
                                                Donna M. Welch, Esq. (*pro hac vice*)
16                                              Daniel C. Moore, Esq. (*pro hac vice*)
                                                Kirkland & Ellis LLP
17                                              300 N. LaSalle
                                                Chicago, IL 60654
18                                              Telephone: (312) 862-2425
                                                Facsimile: (312) 862-2200

19                                              Attorneys for Plaintiffs

20

21

22

23

24

25

26

27

28

1

### CERTIFICATE OF SERVICE

2

I HEREBY CERTIFY that on September 21, 2014 that a copy of the foregoing document is

3

being electronically filed with the Clerk of the United States District Court of the Northern District

4

of California by using the CM/ECF system, which will send notice of such filing to all counsel of

5

record.

6

7

DATED:  September 19, 2014                              KIRKLAND & ELLIS LLP
                                                        Respectfully submitted,

8

9                                                        _/s/ *Marc H. Cohen*_____
                                                         Marc H. Cohen

10                                                       KIRKLAND & ELLIS LLP
                                                         3330 Hillview Avenue

11                                                       Palo Alto, CA 94303
                                                         Telephone: (650) 859-7000

12                                                       Facsimile: (650) 859-7500

13                                                       Jeffrey L. Willian, P.C.
                                                         Donna M. Welch, P.C.

14                                                       Daniel C. Moore
                                                         KIRKLAND & ELLIS LLP

15                                                       300 North LaSalle
                                                         Chicago, Illinois  60654

16                                                       Telephone: (312) 862-2000
                                                         Facsimile: (312) 862-2200

17

18

19

20

21

22

23

24

25

26

27

28

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

25

Plaintiffs' Motion to Dissolve Preliminary Injunction
Monterey Bay Military Housing v. Pinnacle Monterey
CASE NO. 5:14-CV-03953 BLF