# EXHIBIT 35

Investigator will complete the top half of the form.
Interviewer will complete the second half.

| Witness Interview Form | |||
|---|---|---|---|
| **Investigator Section** | |||
| Investigator Name | Deanne Davis | Interviewer Name | Patrick Fulcher |
| Witness Name: | George Boomer | Date of Interview: | 1/20/11 @ 4:30 PM |
| Why is this person being questioned? | | Mr. Boomer is the Maintenance Supervisor @ Fort Belvoir and is the subject of the progressive discipline written warning | |
| Subjects to be covered in interview | | Work order process, progressive discipline written warning, complaint against Patricia Zyzyk, Koby situation | |
| **Questions to ask:** | |||
| When were you made aware and by whom that you were not accurately recording work orders in the system by closing out work orders before the work was completed? What were the circumstances that made you aware of this process?  I am not sure of the exact time or date; it was late October or early November I believe.  That was the first time anyone had every told us that we should not be adjusting the response times in the system.  Tric did not come to me first, she called me into her office, she handed me the tickets she had found and the disciplinary action.  She asked me why the dates had been changed on the tickets, I told her the date was changed for the pass/fail report.  No one else was in that meeting with Tric and I, we met alone.  Immediately after the meeting I came up to the main office and met with John Corriher and I told him that we had been directed to do this in changing the dates on the response time since I had been here. ||||
| How long had you been following the incorrect procedure? Since July 2006 ||||
| Did you personally meet with the Manager Patricia Zyzyk to discuss the work order process? What was discussed? Tric never said George go in and falsify the tickets, but it was always said during our meetings "We have to meet the pass/fail report."  It was the "unspoken rule" here.  I have emails saying we need to do the pass/fail report that I can send to you if they are saved in my email ||||
| Did you ever receive instructions, either written or oral, to close out work orders before they were completed? If yes, by whom? Yes, I have emails from DA Glasby, Eddie Hudspeth and Tric Zyzyk instructing what to do with the pass/fail report that I can send to you. ||||
| Do you have any personal knowledge of instructions to any other associate, either written or oral, to close out work orders before they were completed? The emails from Tric were sent directly to me; emails from DA were sent to everybody. ||||
| Have you ever been instructed to change a work order completion date and time? If yes, by whom? Not specifically, but it was implied.  We had a guy named Carlos Jones who worked here before and his only job was to change the pass/fail report so that it looked good when it was submitted.  They called him the IT guy, but he changed all the numbers in the system. ||||
| Do you have any personal knowledge of instructions to any other associate to change a work order completion date and time? Again, it was mentioned in all staff meetings, but not specifically to change numbers, just "meet the pass fail numbers." ||||
| Have you ever been or felt threatened with punishment if you did not get your pass/fail ||||

Investigator will complete the top half of the form.
Interviewer will complete the second half.

| |
|---|
| percentage up? If yes, when and by whom? Yes, by whoever the manager is at the time, lately it has been by Tric. We were all told that if we did not meet the pass/fail report, we would be written up. |
| Has the work order process and timeframe been discussed in any meetings or trainings? We had training in the beginning how to make the pass/fail report work in our favor. On one occasion was Carlos Jones and the other occasion was DA Glasby. All of the maintenance supervisors were trained on this procedure |
| What counseling did you receive to correct the practice of closing out work orders before the work was completed? I received a final written warning from Tric Zyzyk |
| Have you ever received any counseling or disciplinary action regarding the work order process prior to this incident? If yes, when? I received one for improper use of email, about 2 years ago, but that was it. |
| Why did you disagree with the written warning and decline to sign? Because this was the practice at Belvoir, I felt as though I had been instructed to do this and everyone on base knew this was the procedure and why was I being written up? |
| Did Ms. Zyzyk try to persuade you from talking to Mr. Corriher and suggest in any way that your best recourse was to just sign the written warning and say you would not do it again? Yes she did. When she gave me the final written warning, I told her I did not think it was fair when everyone else was doing the same. Tric told me to write my comments on the form and she said that John Corriher already knew about this matter, there was no need to talk to him, he knew about everything |
| Did Ms. Zyzyk ask you to not say anything in your written statement about her doing pass/fail reports and asking you to do them? She asked me to put in the statement that I wrote that she never did the pass/fail report. |
| Did you personally speak with John Corriher about the written warning? If yes, what was the outcome? After Tric gave me the written warning, I came up after hours and talked to John the same day. I was getting ready to go on vacation the very next week, I spoke with John about my concerns with this being unfair, and that everyone has been doing this for the longest time. John told me not to worry about it, to go on vacation and he and I would meet when I got back from vacation. John told me that while I was gone, he wanted to ask other employees about the process and see if they were doing the same thing. When I returned from vacation, John told me he did speak with other employees and they did confirm that the same procedure I was doing was correct. He specifically mentioned that he spoke to Prince Robinson and Carmen Adams. |
| |
| Did you personally speak with Mr. Corriher regarding your complaint against Ms. Zyzyk? If yes, what was the outcome? Yes I did, John basically told me that this was "the way Tric was" and that she has been allowed to get away with it for years. He told me that he needed time to make some changes around here and for me to just be patient. |
| In your written complaint to Mr. Corriher you stated that you felt Ms. Zyzyk had demonstrated on more than one occasion to be a very dishonest person and often operated on an unethical basis. Can you give specific details or examples? It happens all the time, for instance, we do something for one tenant and we do not do something for another tenant, how is that fair? Tric has different rules for different people, including both residents and employees. Tric treats contractors who are minorities different than white contractors and the same with employees. She berates minority contractors in front of |

AP_LLP_00001314

Investigator will complete the top half of the form.
Interviewer will complete the second half.

| |
|---|
| employees. |
| Did Ms. Zyzyk ever exhibit threatening behavior toward you by cursing, yelling or bullying? If yes, describe the circumstances. Jennifer Watkins had called about some homes that were supposed to be ready, but Jennifer was saying there were issues.  I went to the homes, I called Trick and said that I am not seeing the same things that Jennifer is saying, Tric yelled at me on the phone and said I am tired of this shit and hung up the phone.  One summer we were out of hats on site and it gets really hot here in the summer, I had brought a hat to wear from home, and in a meeting Tric called me out and said I looked like an idiot in front of the staff |
| Do you believe Ms. Zyzyk acts in an ethical and honest manner? If no, why? No, the constant behavior and treatment of employees and the tone in which she degrades people.  She is very divisive and does not want any teamwork.  I truly believe that she takes pleasure in people failing |
| When you were informed by Mr. Corriher that there were no other Maintenance Supervisor positions on the property, did you tell him that things were not as bad with Ms. Zyzyk as you had described and that you wanted to stay in the position and work through your differences? If yes, what compelled you to make that statement? No, I felt like I did not have any other choice but to just stay in my job.  I have a family and I cannot quit my job.  I had no choice but to deal with it. |
| |
| What are the circumstances regarding the Koby situation?  Koby is a maintenance tech underneath me, when Koby came back from his vacation, I heard Koby say before he went on vacation that he was on a call and that a resident had threatened to pull a gun on him and Tric did not do anything about it.  I personally asked Tric about it and she said she never heard about it.  After I mentioned it to her, she told Koby to go back and write a statement about it.  When Koby had left the room, she told me not to say anything to Carmen about it.  After Tric left, I asked Carmen about the incident and to Carmen said that she had told Tric about it and then Carmen called John Corriher immediately and told him about it. |
| Did Ms. Zyzyk ever tell you not to mention or say anything to Carmen Adams about what was going on, in relation to her denial or the incident? Yes she did.  We are all afraid because there is a history of retaliation with Tric |
| |
| |
| |
| **Interviewer Section** | **Date of Interview:** |
| **Witness responses:** |
| |
| |
| |
| |
| |
| |

Investigator will complete the top half of the form.
Interviewer will complete the second half.

| Was witness aware of or had suspicion that fraud was taking place? | ☐ Yes ☐ No |
|---|---|
| If "Yes" please explain: | |
| | |

| List any evidence, collaboration, or documents that witness was able to supply: |
|---|
| |
| |
| |
| |
| |
| |

| Date Form Returned to Investigator: | |
|---|---|

AP_LLP_00001316

Investigator will complete the top half of the form.
Interviewer will complete the second half.

| Witness Interview Form ||||
|---|---|---|---|
| **Investigator Section** ||||
| Investigator Name | Deanne Davis | Interviewer Name | Patrick Fulcher |
| Witness Name: | Juan Correra | Date of Interview: | 1/20/11 @ 1:30 PM |
| Why is this person being questioned? | Work order requirements with completion date and time |||
| Subjects to be covered in interview | Work order process, interaction with Patricia Zyzyk |||
| **Questions to ask:** ||||
| What is your understanding of the work order completion process and timeframe? This changed recently when John Corriher joined the team, All the technicians complete work orders with actual response time and work time. As supervisor, I am responsible to go back and make sure the tickets are closed correctly and audit them. ||||
| Have you ever been told to change a work order completion date and time? Eddie Hudspeth, DA Glasby and Dale Andrews started back 5 years ago and told us that the work orders must be in the 72 hour pass/fail guidelines for response times. ||||
| If yes, by who and is this practice base-wide? Yes it is. It has been discussed in meetings by Eddie Hudspeth, DA Glasby and Dale Andrews. It was discussed in front of all the Maintenance Supervisors. ||||
| To your knowledge, has this practice been discussed openly in any manager meetings? The practice of meeting the 72 hour timeframe was discussed at manager meetings by Eddie Hudspeth and Dale Andrews I am sure of.<br><br>By who? Eddie Hudspeth and Dale Andrews<br><br>Were you ever present at these meetings? Yes, at most of the supervisor's meetings I was there. ||||
| Have you ever expressed your concerns over this practice? Only to other maintenance supervisor's but not to management<br><br>If yes, to whom? Dane Smith ||||
| Have you ever been or felt threatened with punishment if you did not get your pass percentage up? No one said it to me directly, but I have felt my job was threatened, it was implicated in the meetings by Eddie Hudspeth and Dale Andrews<br><br>If yes, by who? Eddie Hudspeth and Dale Andrews ||||

Investigator will complete the top half of the form.
Interviewer will complete the second half.

| |
|---|
| Have you ever been or felt threatened, yelled at or bullied by Patricia Zyzyk? No |
| Have you ever witnessed Patricia Zyzyk threatening, yelling or bullying another associate? No |
| What are your impressions of Patricia Zyzyk as the Manager? I think that she is a good manager; she is very much a micromanager though and is very tough on her team. |
| Do you believe she acts in an ethical and honest manner? Yes<br>If no, why? |
| |
| |
| |

| **Interviewer Section** | **Date of Interview:** | |
|---|---|---|
| **Witness responses:** | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| Was witness aware of or had suspicion that fraud was taking place? | ☐ Yes | ☐ No |
| If "Yes" please explain: | | |
| List any evidence, collaboration, or documents that witness was able to supply: | | |
| | | |
| | | |
| | | |

AP_LLP_00001326

Investigator will complete the top half of the form.
Interviewer will complete the second half.

| Date Form Returned to Investigator: | |
|---|---|

AP_LLP_00001327

Investigator will complete the top half of the form.
Interviewer will complete the second half.

| Witness Interview Form ||
|---|---|
| **Investigator Section** ||
| Investigator Name | Deanne Davis |
| Interviewer Name | Patrick Fulcher |
| Witness Name: | Patricia Zyzyk |
| Date of Interview: | 1/20/11 @ 4:00 PM |
| Why is this person being questioned? | Ms. Zyzyk is the community Manager @ Fort Belvoir and has knowledge of the complaint from George Boomer, knowledge of the work order process, knowledge of progressive discipline |
| Subjects to be covered in interview | Progressive discipline written warning, work order process, Mr. Boomer's complaint, Koby situation |
| **Questions to ask:** ||
| When you were made aware that Mr. Boomer was closing out work orders before the work was completed what method did you use to test other closed work orders?  The specific work order that I initially found was related to a garage door needing repair and the work not being completed, I noticed in Yardi, the resident phoned in and asked when the work was going to be done on his garage door? The system was showing that the work had been completed and the ticket closed.  I asked George Boomer about it via email, he responded that the parts were on order and that it would be repaired, but he never responded to the closing out the ticket early.  I did not test any other work orders at that point, John Corriher and Jennifer Watkins found others in the system.  They found other work orders being closed prior to the work actually being completed.  This is what sparked the action where John suggested disciplinary action for George Boomer.  John suggested we gather the information and send it to Patrick for review and guidance.  Part of the delay was that I thought George Boomer, believed like I did, that we had been instructed to close out the work orders early.  I was previously given this instruction by Mary Bronwyn and it was revisited with Jean Downey during several meetings that the work orders must pass the 72 hour deadline for the pass/fail report. ||
| What evidence did you present to Mr. Boomer during the initial meeting?  I presented him with the work order that I had found and the ones that John Corriher and Jennifer Watkins had found. ||
| What was Mr. Boomer's response?  George felt that the disciplinary action was unfair to be a final warning- he thought it should be an oral warning or coaching.  He stated that he had been instructed by DA Glasby and Eddie Hudspeth to close out the work orders early.  George did state during my meeting with him that I had been against this from the beginning.  The meeting ended by George Boomer writing the handwritten statement disagreeing with the written warning. ||

AP_LLP_00001331

Investigator will complete the top half of the form.
Interviewer will complete the second half.

| |
|---|
| Did you ever give instructions to Mr. Boomer, either written or oral, to close out work orders before they were completed? If they were uncompleted and we could not enter the home because the resident had a dog, minor dog or attempted 3 times unsuccessfully and to note that on the work order. That is the only time I have ever given direction to not close out a work order without the work being done. |
| Did you ever give instructions to any other associate, either written or oral, to close out work orders before they were completed? If they were uncompleted and we could not enter the home because the resident had a dog, minor dog or attempted 3 times unsuccessfully I would give direction to close out the work order. |
| During the meeting with Mr. Boomer did you appear hostile or threaten made you aware of this practice? Not that I perceived. |
| Have you ever told associates to change a work order completion date and time? No<br><br>Are you aware of anyone else giving those instructions? Yes, I have heard instructions being given by DA Glasby and Eddie Hudspeth. These instructions were given in meetings, emails and one on ones. |
| If yes, is this practice base-wide? To my understanding it is. |
| Have you ever received or are you aware of any concerns by associates regarding this practice? Yes, Julie Divine has come to me before and expressed her concerns about our liability, she is another Community Manager. Kevin Sealy was my Asst Manager he also brought this practice to my attention and felt it was not right. I believe Dane Smith and I had this conversation as well. Also Carmen Adams brought it up during a training class we were having with John Corriher in November 2010. John clarified during the meeting that the exact dates/times were to be entered. |
| Has the work order process and timeframe been discussed in any meetings or trainings? There was an email from John Corriher on a Friday in November stating and clarifying the practice. John has discussed it in many meetings since then, even up to this last Tuesday in the staff meeting it was a topic. We reviewed Pinnacle's policy that we are to close out work orders only when they were actually complete and enter correct start/end dates for work and response times. We were to use the actual work times.<br><br>Is there a written process given to associates? Only in emails that came out from management, but no policies |

AP_LLP_00001332

Investigator will complete the top half of the form.
Interviewer will complete the second half.

| |
|---|
| Did you have any follow-up discussions with the other maintenance associates regarding the work order process and timeframe?  We discussed in our weekly meetings after I had the discussion with George Boomer.  I did not discuss it every meeting. |
| Did you keep an attendance sheet for all group trainings/meetings? No |
| Was there any further conversation concerning the progressive discipline? No, George did not come back to me after our initial meeting. |
| What is your process for handling disciplinary issues? I usually try to coach them one on one, I send a lot of emails so I have written documentation of what I have told someone.  I do progressive discipline and I partner with HR and John Corriher when I am having an employee issue.<br><br>When do you ask your supervisor to participate? I look to HR and John Corriher at the same time for direction. |
| Did you personally speak with John Corriher and Jim Milligan before the written warning was issued? Yes, I did speak to both of them prior to the written warning was issued.<br><br>If yes, did they agree with the decision to issue the warning? Jim had suggested that we talk to George instead of doing the write up, but we felt due to the severity of the matter and HR's guidance it should be a final written warning. |
| Were you given any instructions from Mr. Corriher or Mr. Milligan on how to handle the situation with Mr. Boomer? I was asked to document the situation and have a conversation with George Boomer about the issue. |
| Did you try to persuade Mr. Boomer from talking to Mr. Corriher and suggest in any way that his best recourse was to just sign and say he would not do it again? No, I did not ever tell him to not talk to John; I encouraged him to write comments about how he felt about it not being fair. |
| Did you ask Mr. Boomer to not say anything in his written statement about you doing pass/fail reports and asking him to do them? No |

AP_LLP_00001333

Investigator will complete the top half of the form.
Interviewer will complete the second half.

| |
|---|
| Give brief explanation of pass/fail report? Report that Fort Belvoir does to see if we pass the time standards that we have agreed with the Army. It is our service level agreement with the partnerships and the Army. It is like a report card. |
| When and how were you made aware of Mr. Boomer's complaint against you? In a meeting with myself and George Boomer. John, George and I were all meeting together.<br><br>By whom? John Corriher |
| Did you personally discuss the complaint with Mr. Corriher or Mr. Milligan? I discussed in the conversation with John that I did not know that George felt that way. We discussed that I would try not to nag him and work together better as a team.<br><br>What was the outcome of the discussion? We were going to try to work better together |
| Did you personally discuss the complaint with Mr. Boomer? I did in the meeting with John and George Boomer. I advised him that we would try to work better together. |
| What were your impressions of Mr. Boomer's complaint? I feel that George does not appreciate my style of follow up when I ask him that things have been done. He does not like being asked about things he should have gotten done. |
| What action did you personally take in this matter? I did some soul searching and I have tried to work very closely with George on improving our relationship. I have tried to be more positive, but it seems everything I asked he gets very defensive about everything. |
| Are you aware of any complaints against you for threatening behavior, yelling or bullying? From DA Glasby and George Boomer<br><br>If yes, what steps were taken and what was the outcome? I was placed on disciplinary action regarding my management style and coached by John on how to be a better manager. |
| Do you believe you act in an ethical and honest manner? Yes |

AP_LLP_00001334

**Investigator will complete the top half of the form.**
**Interviewer will complete the second half.**

| |
|---|
| What was the outcome of the Ethic training with your team? I felt that is was very eye opening for Jim to see the response of the staff and all the issues we are facing here. There is a lot of dissension in the team.  People are not happy here, it goes back a long way.  When Pinnacle took over there was not a foundation laid.  I think the training was good, but it has not been followed up on.<br><br>Who attend from Senior Leadership? John Corriher, Jim Milligan and all the Community Managers and Maintenance Leadership team |
| What are the circumstances regarding the Koby situation?  Koby reported an incident with a resident that had threatened to pull a gun on him to Carmen Adams, and then Carmen told me about the situation. Carmen told me the resident said that if he had a gun he would have shot him.  I did not take this as a threat.  I realize I did not do the right thing and talk to Koby immediately, once it was brought to my attention that Koby felt threatened, I picked up the phone and called John and partnered with HR<br><br>How does it relate to Mr. Boomer? George brought Koby to me after Koby returned from vacation to tell me about the incident, that was all.  George was not involved past that point |
| Did you tell Mr. Boomer not to mention or say anything to Carmen Adams about what was going on, in relation to her denial or the incident?  No, I did not tell Carmen not to say anything about it. |

| Interviewer Section | Date of Interview: | |
|---|---|---|
| Witness responses: | | |
| | | |
| Was witness aware of or had suspicion that fraud was taking place? | ☐ Yes | ☐ No |
| If "Yes" please explain: | | |
| List any evidence, collaboration, or documents that witness was able to supply: | | |
| Date Form Returned to Investigator: | | |

AP_LLP_00001335