# EXHIBIT 9

Ronald S. Granberg, Esq. (Bar No. 80111)
Justin M. O'Connell, Esq. (Bar No. 232188)
Granberg Law Office
134 Central Avenue
Salinas, California 93901
telephone: (831) 422-6565
facsimile: (831) 422-5550

Jeffrey L. Willian, Esq. (*pro hac vice*)
Donna M. Welch, Esq. (*pro hac vice*)
Daniel C. Moore, Esq. (*pro hac vice*)
Kirkland & Ellis LLP
300 N. LaSalle
Chicago, IL 60654
telephone: (312) 862-2425
facsimile: (312) 862-2200

FILED

MAY 22 2013

CONNIE MAZZEI
CLERK OF THE SUPERIOR COURT
_____DEPUTY
CARMEN B. OROZCO

Attorneys for: Plaintiffs

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF MONTEREY

| | |
|---|---|
| Monterey Bay Military Housing, LLC, et al.,<br><br>    Plaintiffs,<br><br>vs.<br><br>Pinnacle Monterey LLC, et al.,<br>    Defendants.<br><br>And related cross-complaint and consolidated action. | Case No. M 112710 (M115143)<br><br>**PLAINTIFFS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO ENFORCE DEPOSITION SUBPOENAS FOR PRODUCTION OF BUSINESS RECORDS**<br><br>Date:  June 14, 2013<br>Time:  9:00 am<br>Dept:  15 |

To each party and to all counsel of record: You are hereby notified that on June 14, 2013, at 9:00 a.m. in Department 15 at the above-entitled court located at 1200 Aguajito Road, Monterey, California, Plaintiffs will move for a court order enforcing Deposition Subpoenas for Production of Business Records ("Subpoenas") served upon JP Morgan Chase Bank, NA, Bank of America, Alaska USA Federal Credit Union, and Union Bank, N.A., including Union Bank of California. This motion will be based on Code of Civil Procedure sections 2017.010, 1985.3 and


1987.1, on the grounds that Plaintiffs' need for these critical bank records outweighs the account holders' interest in preventing their disclosure.

The motion will be supported by the Points and Authorities, the declarations of Amy E. Crawford and Guy Winters, a Separate Statement in Support, and any additional evidence and argument the Court might receive at or before the hearing.

Date: May 21, 2013

                                            Justin O'Connell, Esq.
                                            *Granberg Law Office*
                                            Jeffrey L. Willian, Esq.
                                            Donna M. Welch, Esq.
                                            Daniel C. Moore, Esq.
                                            *Kirkland & Ellis LLP*

                                            Attorneys for Plaintiffs

# INTRODUCTION

Plaintiffs move to enforce several subpoenas to obtain critical bank account records of seven employees of the Pinnacle Defendants directly involved in the alleged fraud and intentional misconduct at the Monterey and Irwin Projects. Discovery to date demonstrates that the bank records sought are necessary to uncover evidence of vendor bribes and kickbacks, as well as any other intentional misconduct such as improper bonuses for engaging in work order fraud. At the Irwin Project, Rick Wimer, AMSC's second most senior employee, was reprimanded for misconduct involving Mainscape, one of the Projects' largest vendors, which resulted in "excessive charges to the project." (Crawford Decl., Ex. 1, Written Reprimand at p. 2.) In addition, in early 2009, then-Investment Manager Stacia Schuster informed the asset manager working on behalf of the Plaintiff Owner, CMC, that envelopes containing some form of financial compensation had been paid by vendors to multiple Pinnacle employees, including Wimer. (5/2/13 Winters Decl. ¶ 4.)

At the Monterey Project, ample evidence demonstrates that AMS and AMSC management ordered employees to engage in rampant falsification of work orders to make AMSC's performance appear better than it was, in order to increase AMSC's incentive fee and related management bonuses. (*See, e.g.*, Crawford Decl., Ex. 2, 11/30/11 Johnson Decl. ¶¶ 4-7.) In addition, evidence developed to date shows that management intervened in the normal bidding process for a particular contract to allow a vendor, later identified by another vendor as having paid bribes to AMSC employees, to re-bid on a project in order to beat out the legitimate low bidder. (Crawford Decl., Ex. 3, 12/12/11 Merrill Decl. ¶ 10.)

Because perpetrators of fraud typically take pains to obscure their unlawful conduct, other documentary evidence of bribes and kickbacks, including bank account records, are often the only way to obtain such evidence. Indeed, similar subpoenas issued in the parallel case in Georgia against Defendant AMS and its East Coast affiliate, AMSE—to which AMS, AMSE, and their employees did not object—confirmed that AMS/AMSE employees received kickbacks from vendors totaling tens of thousands of dollars or more. For example, AMSE's Maintenance Director at Fort Belvoir denied any vendor impropriety, but after being confronted with bank

Granberg Law Office
134 Central Avenue
Salinas, CA 93901

records was forced to concede that he had received tens of thousands in cash and checks from at least two Belvoir project vendors. These checks were made out to a fictitious company that the Maintenance Director had created; thus documents from the vendors, even if provided, would not have allowed discovery of the scheme. (Crawford Decl., Ex. 4, 7/11/11 Dudney Aff. ¶ 15.)

So too here, subpoenas to obtain bank account records from the seven employees personally involved in the alleged fraud and misconduct at the Monterey and Irwin Projects are necessary to discover any evidence of bribes and kickbacks paid by vendors or other evidence of fraud and intentional misconduct that damaged the Projects. These employees will not be burdened in any respect, as the documents will be produced from the financial institutions and Plaintiffs will bear all related costs.

## BACKGROUND

### I. The Employees' Involvement in Fraudulent Schemes at the Projects.

Evidence developed to date demonstrates that each of the employees whose bank accounts Plaintiffs have subpoenaed were or are involved in alleged fraud involving either vendors or the falsification of work orders. Although the Pinnacle Defendants have attempted—in this case and in the related Georgia action—to deny or minimize vendor kickback schemes to their employees, direct evidence of such schemes exists.

Each of the employees whose bank account records Plaintiffs have sought are directly implicated in the alleged vendor misconduct or work order fraud:

*Irwin Project*

- **Rick Wimer** was AMSC's Community Director at the Irwin Project. He was responsible for selection of vendors at the Irwin Project, including Mainscape, the former landscaping vendor, which was paid over $12 million by Plaintiff CMC for the years 2004-2010. (Crawford Decl., Ex. 5, 11/29/12 Dudney Decl. ¶ 6.) In September 2008, Wimer was formally reprimanded for impropriety involving Mainscape, which resulted in the payment of "excessive charges" by CMC. (Crawford Decl., Ex. 1, Written Reprimand at 2.) The Pinnacle Defendants never disclosed to the Owner or Asset Manager that the Owner incurred the excessive charges described in Wimer's

reprimand. Also, when interviewed by the Projects' external auditor, Wimer denied having any personal relationships with project vendors, including Mainscape. (Crawford Decl., Ex. 5, 11/29/12 Dudney Decl. ¶ 5) Only later, upon being confronted with documentary evidence of the reprimand, did Wimer reveal that he had a *30-year personal relationship with Mainscape*. (*Id.* at ¶¶ 5-11.) Wimer also apparently received vendor compensation, as reported by Schuster. (5/21/13 Winters Decl. ¶ 4)

- **Stacia Schuster** was the Community Director at Monterey, and worked directly with Shawn Somerville in ordering the falsification of work order data. (Crawford Decl., Ex. 23, 11/30/11 Johnson Decl., ¶¶ 4-5.) She was later promoted to Investment Manager at Fort Irwin, where she also again altered system records to improve work order pass rates. (Crawford Decl., Ex. 6, 7/3/07 S. Schuster Email to S. Somerville.) When interviewed by the Projects' external auditor, she failed to disclose Rick Wimer's improper relationship with Mainscape, even though she had reprimanded him for Mainscape's "excessive charges to the project." (Crawford Decl., Ex. 5, 11/29/12 Dudney Decl. ¶ 5; Crawford Decl., Ex. 1, Written Reprimand at p. 2.) When later confronted with the reprimand of Wimer, prepared and signed by Schuster personally, she claimed she could not recall the allegations, and attempted to downplay her own written words. (Crawford Decl., Ex. 5, 11/29/12 Dudney Decl. ¶ 10) Plaintiffs have not found any evidence to show that Schuster, despite having a duty to do so, disclosed the alleged overcharges paid for by the Owner as a result of Wimer's misconduct. While it is unclear, the payments a vendor destined for Pinnacle employees, and apparently paid in past years, may have been related to the Mainscape overcharges identified by Schuster.

- **Westly Campbell** was the Maintenance Director at Irwin, and as such, had direct responsibility for selection of, and negotiations with, vendors at that project. As AMSC's third most senior employee at Fort Irwin, with responsibility for vendor selection, Campbell no doubt was a recipient of the compensation being paid by a project vendor to AMSC employees. (Winters Decl. ¶ 4) Moreover, Schuster

identified that that the work order reports by Pinnacle employees at Irwin had been, in her words, "fudged". (Crawford Decl., Ex. 7, 2/19/2008 S. Schuster Email to J. Merrill.) As Maintenance Director, Campbell would have been responsible for such work order reports.

*Monterey Project*

- **Shawn Somerville**, Project Investment Manager at Monterey, directed the widespread falsification of work order data in order to inflate AMSC's incentive fees and management bonuses. (Crawford Decl., Ex. 3, 12/12/11 Merrill Decl. ¶¶ 3-4; Crawford Decl., Ex. 2, 11/30/11 Johnson Decl. ¶¶ 3-7.) Emails between Sommerville and Schuster indicate that they agreed to engage in the work order fraud in order to inflate financial compensation that each would receive from Pinnacle. (Crawford Decl., Ex. 6, 7/3/07 S, Schuster Email to S. Somerville; Crawford Decl., Ex. 7, 2/19/08 S. Schuster Email to J. Merrill.) In addition, at least one former employee has testified that Somerville intervened in a vendor bidding process, allowing a vendor, who was later identified by another vendor as having provided bribes to Defendants, to re-bid on a project in order to beat out the legitimate low bidder. (Crawford Decl., Ex. 3, 12/12/11 Merrill Decl. ¶ 10.)

- **Ron Calloway**, Maintenance Director at Monterey, personally directed employees to "scrub" work order data to change fails to passes. In a representative example, Calloway wrote to his staff: "Please insure that you have closed all work orders and scrub them to insure they pass." (Crawford Decl., Ex. 8, 8/28/07 R. Calloway Email to M. Waibel; *see also* Crawford Decl., Ex. 9, 11/5/07 R. Calloway Email ("also, scrub your work orders"); Crawford Decl., Ex. 10, 12/3/07 R.Calloway Email 3 AMS-CAL00080031 ("close out and scrub so our pass percentage is good.") Declarations from former Pinnacle employees confirm that the instruction to "scrub" was meant to convey the direction to falsify the number of work order passes. (Crawford Decl., Ex. 11, 6/27/12 Decl. of Michael Waibel ¶ 11; Crawford Decl., Ex. 12, 7/12/12 Decl. of

4   Monterey Bay Military Housing v. Pinnacle Monterey
MOTION TO ENFORCE DEPOSITION SUBPOENAS FOR PRODUCTION OF BUSINESS RECORDS

Dianne Frye ¶ 4.) As Maintenance Director, Calloway regularly dealt closely with vendors. (Crawford Decl. Ex. 14, 7/10/12 Calloway Dep. at 237:23-25.)

- **Michelle Calloway**, is Community Manager and thus the second most senior AMSC employee at Monterey. Ms. Calloway was also involved in directing employees to falsify work orders in order to inflate AMSC's incentive fees and management bonuses. (Crawford Decl., Ex. 3, 12/12/11 Merrill Decl. ¶¶ 5-6; Crawford Decl. Ex. 2, 11/30/11 Johnson Decl. ¶ 4.)

- **Amado Olivares**, Maintenance Director and former Senior Maintenance Supervisor at Monterey, admitted during his deposition that in 2007 he altered hundreds of work orders over a period of a few days. (Crawford Decl., Ex. 14, 7/11/12 Olivares Dep. at 55:9-56:15.) As Maintenance Director, Olivares has responsibility for vendor selection and negotiations. (*See* Crawford Decl., Ex. 15, 8/2/12 Olivares Dep. at 6:24-7:1; Crawford Decl., Ex. 14, 7/11/12 Olivares Dep. at 108:20-25)

## II. Significance Of Bank Account Discovery.

### A. Prior Bribes at Belvoir

The targeted bank account discovery Plaintiffs seek here proved critical to discovering vendor fraud in a parallel case in Georgia involving Forts Benning and Belvoir. In that case, Plaintiffs sought and obtained discovery of bank records of employees of AMS, a defendant in this lawsuit, and its affiliate, AMSE. The bank records revealed that Eddie Hudspeth, Maintenance Director at Fort Belvoir, received tens of thousands of dollars in cash and checks from at least two Belvoir project vendors. (Crawford Decl., Ex. 5, 11/29/12 Dudney Decl. ¶ 13(b).) Most of the kickbacks had been paid to a fictitious company that he had created, Fontaine Finishes Corp., which further helped conceal such vendor payments. (Crawford Decl., Ex. 4, 7/11/11 Dudney Aff. ¶ 15.) Although Hudspeth had previously denied any improprieties with respect to vendors to the third party project auditors, when faced with the evidence of his bank account records he admitted that he had lied in previous interviews. (Crawford Decl., Ex. 5, 11/29/12 Dudney Decl. ¶ 13(b).) Hudspeth further revealed that he had told the AMSE Investment Manager at Belvoir, Dale Andrews, about the illegal payments, and Andrews responded by advising Hudspeth not to

ranberg Law Office
34 Central Avenue
alinas, CA 93901

disclose the improper relationship. (*Id.* at ¶ 13(c).) Given that AMS employees repeatedly denied any knowledge of vendor bribes or kickbacks, much of the evidence of vendor kickbacks would not have been uncovered without discovery of employee bank account records.

### B. Prior Bribes at Benning

High level employees of AMS/AMSE also accepted vendor bribes at Benning. For example, the Maintenance Supervisor at Benning, Ken Basaraba, accepted cash payments from a Benning vendor who performed turn work for the project. (Crawford Decl., Ex. 16, 3/11/10 Sworn Statement of D. Eller, ¶ 10.) The Community Director at Benning, Terry Bond, also accepted jewelry and other gifts from a Benning vendor. (Crawford Decl., Ex. 17, 12/21/10 Potts Decl., at ¶¶ 8-9.) These same management employees were also involved in work order fraud at Benning. (*See, e.g.*, Crawford Decl., Ex. 18, 10/18/11 Cassidy Aff. ¶ 4.) After Pinnacle was removed at Benning, vendor costs have been reduced dramatically, improving the financial performance of the Benning project. (Crawford Decl., Ex. 4, 7/11/11 Dudney Aff. ¶ 24.)

### III. Procedural History.

Plaintiffs' Second Set of Special Interrogatories requested bank account numbers for the above seven Pinnacle Defendant employees, whom Plaintiffs deemed most likely to have received bribes, kickbacks, or other inappropriate payments. The Pinnacle Defendants first asserted that they did not have access to the account numbers (Crawford Decl., Ex. 19, 10/16/12 Defs.' Resp. to Spec. Interrog. Set 2, No. 1), but then moved for a protective order to avoid having to disclose the information. The Court denied Defendants' motion. (2/13/13 Order.)

Defendants subsequently produced the employees' bank account numbers. Plaintiffs served subpoenas to the employees' respective financial institutions, requesting, among other things, the employees' monthly account statements, and the banks' communications with the employees. (Crawford Decl., Ex. 20, Bank Subpoenas.) The employees, represented by counsel for the Pinnacle Defendants, have objected to the subpoenas on privacy, relevancy, and other grounds (Crawford Decl., Ex. 21, Employees' Objections), halting the banks' obligation to respond to the subpoenas. Code Civ. Proc. § 1985.3, subd. (g).) On May 10, 2013, counsel for

the parties (and the employees) conducted a telephonic meet and confer and confirmed that they were at impasse. (Crawford Decl. ¶ 1)

## ARGUMENT

**I. Plaintiffs' Subpoenas Seeking Bank Account Records Of AMSC Employees Who Evidence Demonstrates Likely Engaged In Fraud Should Be Enforced Over The Employees' Objections.**

**A. Legal Standard.**

Code of Civil Procedure section 2017.010 provides that "any party may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action…if the matter either is itself admissible in evidence or appears reasonably calculated to lead to the discovery of admissible evidence." "Courts have construed the discovery statutes broadly, so as to *uphold the right to discovery wherever possible.*" (Cal. Prac. Guide Civ. Proc. Before Trial (The Rutter Group 2012) Ch. 8B-2 ¶8:36 [citing *Greyhound Corp. v. Super. Ct. (Clay)* (1961) 56 Cal.2d 355, 377-78; *Emerson Elec. Co. v. Super. Ct. (Grayson)* (1997) 16 Cal.4th 1101, 1108], (emphasis added).)

Further, the California Supreme Court has held that an individual's right to privacy over his or her financial information is not absolute, but must be balanced against a party's need in litigation to discover the truth. (*Valley Bank of Nevada v. Super. Ct.* (1975) 15 Cal.3d 652, 657 [holding that "bank customer information should not be wholly privileged and insulated from scrutiny by civil litigants."]; *Garcia v. Progressive Choice Ins. Co.* (S.D.Cal., Aug. 24, 2011, No. 11cv466-BEN) 2011 WL 3739490 [p. 3] [holding that the constitutional right of privacy "may be abridged to accommodate a compelling public interest" such as "uncovering the truth in legal proceedings by allowing broad discovery" (citing *Moskowitz v. Super. Ct.* (1982) 137 Cal.App.3d 313, 316.)].)

Applying this balance, courts routinely order the discovery of financial records of individuals, *including non-parties to the litigation*, over privacy objections. *(See, e.g. Hecht, Solberg, Robinson, Goldberg & Bagley v. Super. Ct.* (2006) 137 Cal App. 4th, 579 [ordering discovery of law firm's financial records over privacy objections because records were "relevant and material" to plaintiff's case]; *Babcock v. Super. Ct.* (1994) 29 Cal. App. 4th, 579 [in a divorce

case, discovery of non-party's financial records was proper when it was suspected that the non-party illegally received community property]; *Garcia, supra*, 2011 WL 3739490, at [p.3] [financial records of non-party husband of plaintiff in an insurance dispute were discoverable when relevant to insurance company's fraud defense].)

### B. The Subpoenas Seek Highly Relevant Information.

In their Third Amended Complaint, Plaintiffs allege that Defendants have engaged in fraud and intentional misconduct, including vendor-related fraud, at both the Monterey and Irwin projects. (9/25/12 Pls.' Third Am. Compl., ¶¶ 55-121) Evidence developed to date has revealed that the employees whose records are sought were personally involved in schemes to falsify work orders or to receive vendor kickbacks. Plaintiffs have discovered direct evidence that vendor impropriety resulted in payment of "excessive charges" to Mainscape at Fort Irwin, and that a vendor was paying unauthorized compensation to AMSC employees at Fort Irwin. (Crawford Decl., Ex. 1, Written Reprimand at 2; Crawford Decl., Ex. 2, 5/2/13 Winters Decl. ¶ 4.) In addition, the Monterey AMSC employees whose bank records are sought directed or were personally involved in the widespread falsification of work order data. (*See, e.g.* Crawford Decl., Ex. 4, 12/12/11 Merrill Decl. ¶¶ 5-6; Crawford Decl. Ex. 3, 11/30/11 Johnson Decl. ¶ 4.) In addition, the evidence shows that Shawn Somerville at Monterey specifically hand-picked a vendor identified as one that paid kickbacks to employees of Pinnacle Defendants, instead of going with the original low bidder on the project, which he rejected. (Crawford Decl., Ex. 3, 12/12/11 Merrill Decl. ¶ 10)

Plaintiffs have subpoenaed the records of only seven employees at the two Projects -- each of whom is directly involved in the alleged fraud and other intentional misconduct discovered to date. Thus, the discovery sought is "reasonably calculated" to lead to the discovery of admissible evidence not only of the employees' receipt of vendor kickbacks (which is likely given that each of the employees were involved with vendor relationships), but also of any other inappropriate payments, such as bonuses from management for falsifying work orders or "hush" payments for staying silent about other misconduct. Such evidence is critically important not only to Plaintiffs' claims for fraud, unjust enrichment, breach of fiduciary duty, and deceit, but also to Plaintiffs'

claims for declaratory relief that the Property Management Agreements between Plaintiffs and AMSC were terminated upon AMSC's commission of fraud. (9/25/11 Pls.' Third Am Compl. ¶¶ 146-229)

### C. The Facts of this Case Support Enforcing the Subpoenas Over the Employees' Objections.

Plaintiffs' motion to enforce should also be granted because Plaintiffs' need for the bank records outweighs these employees' privacy rights. The California Supreme Court has held that the evaluation of the competing rights of privacy and civil discovery is necessarily fact-specific. *(Valley Bank, supra,* 15 Cal.3d at p. 658.) Relevant factors include "the purpose of the information sought, the effect that disclosure will have on the parties and on the trial, the nature of the objections urged by the party resisting disclosure, and ability of the court to make an alternative order which may grant partial disclosure, [or] disclosure in another form[.]" (*Ibid.* [citing *Greyhound, supra,* 56 Cal. 2d 355].)

Considering these factors, and in light of the limited scope of the subpoenas, the balance here falls on ordering production of the bank account records. First, there is likely no other way for the Plaintiffs to uncover direct evidence of vendor kickbacks to AMSC employees at Monterey and Irwin. This is clear not only from the fact that several of the seven employees have already denied having relationships with vendors until faced with contradictory evidence (Crawford Decl. Ex. 5, 11/29/12 Dudney Decl. ¶ 5), but also the fact that, in the parallel case in Georgia, Plaintiffs would not have received direct evidence of kickbacks without similar discovery. (*See, ante,* Background § II.) Second, by directing the request only to those employees who have been directly implicated in fraudulent schemes already, Plaintiffs have tailored the subpoenas so as to avoid unnecessarily impacting privacy concerns. Also, because evidence indicates that these employees were directly involved in the alleged fraud and misconduct, and because they are willingly acting as employees of a managing agent, their right to privacy regarding evidence relating to that fraud is diminished. Finally, the privacy concerns of the employees are adequately protected by an existing Protective Order in this case, which allows third parties to mark documents as "Confidential" or "Confidential – Attorney's Eyes / Auditor's Eyes Only."

nberg Law Office
Central Avenue
nas, CA 93901

(7/31/2012 Confidentiality Stipulation and Protective Order.) Because the critical need for the discovery outweighs the weak privacy interests of individuals shown to have perpetrated fraud, the subpoenas should be enforced.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion and enter an order enforcing Plaintiffs' subpoenas for employee bank account records.

May 21, 2013
Date

Ronald S. Granberg, Esq.
Justin M. O'Connell, Esq.
*Granberg Law Office*

Jeffrey L. Willian, P.C.
Donna M. Welch, P.C.
Daniel C. Moore, Esq.
Amy E. Crawford, Esq.
*Kirkland & Ellis LLP*

Attorneys for Plaintiffs

| | |
|---|---|
| 1 | MONTEREY BAY HOUSING v. PINNACLE MONTEREY     CASE NO. M 112710 |
| 2 | PROOF OF SERVICE |

I am employed in the County of Monterey, State of California. I am over the age of eighteen years and not a party to the within action. My business address is 134 Central Avenue, Salinas, California.

On May 21, 2013, I caused the following documents entitled:

**PLAINTIFFS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO ENFORCE DEPOSITION SUBPOENAS FOR PRODUCTION OF BUSINESS RECORDS**

to be served on the party(ies) or its (their) attorney(s) of record in this action listed below by the following means:

☒ BY MAIL. By placing a true copy thereof in a sealed envelope (with postage affixed thereto) in the U.S. Mail at the Law Office of Ronald S. Granberg, 134 Central Avenue, Salinas, CA 93901. I am readily familiar with this firm's practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and, in the ordinary course of business, correspondence would be deposited with the U.S. Postal Service in the same day it was placed for collection and processing.

☐ BY PERSONAL DELIVERY. By causing a true copy thereof to be delivered by hand at the address(es) shown below.

☐ BY OVERNIGHT DELIVERY. By causing a true copy to be sent by overnight mail, UPS delivery, or Federal Express delivery, with delivery charges to be billed to the Law Office of Ronald S. Granberg.

☒ BY EMAIL SERVICE. By causing a true copy thereof to be transmitted electronically, by "email", to the email addresses set forth below.

☐ BY FACSIMILE TRANSMISSION. By transmitting a true copy thereof by facsimile transmission from facsimile number (831) 422-5550 to the facsimile number(s) shown below.

And addressed as follows:

| | | |
|---|---|---|
| William J. Goines, Esq. | Linda Dakin-Grimm, Esq. | Scott A. Edelman, Esq. |
| Cindy Hamilton, Esq. | Delilah Vinzon, Esq. | Elizabeth M. Virga, Esq. |
| *Greenberg Traurig, LLP* | *Milbank Tweed Hadley & McCloy LLP* | *Milbank Tweed Hadley & McCloy LLP* |
| 1900 University Ave., 5th Floor | 601 S. Figueroa St., 30th Floor | 1 Chase Manhattan Plaza |
| East Palo Alto, CA 94303 | Los Angeles, CA 90017 | New York, NY 10005-1413 |
| Fax: (650) 328-8508 | Fax: (213) 629-5063 | Fax: (212) 530-5219 |
| Email: goinesw@gtlaw.com; hamiltonc@gtlaw.com | Email: ldakin-grimm@milbank.com; dvinzon@milbank.com | Email: sedelman@milbank.com; evirga@milbank.com |

*(Continued on following page.)*

Granberg Law Office
134 Central Avenue
Salinas, CA 93901

\\GLO-SBS2K8\Users Shared Folder\00-data\02-client\mbmh 6784\pos\pos052113c.docx

Monterey Bay Military Housing v. Pinnacle Monterey #M 112710
PROOF OF SERVICE

| | |
|---|---|
| Douglas R. Young, Esq.<br>Karen Kimmey, Esq.<br>Jennifer A. Teaford, Esq.<br>*Farella Braun & Martel, LLP*<br>235 Montgomery Street<br>San Francisco, CA 94104<br>Fax: (415) 954-4480<br>Email: dyoung@fbm.com;<br>kkimmey@fbm.com;<br>jteaford@fbm.com | Thomas Dutton, Esq.<br>Daniel Hildebrand, Esq.<br>*Greenberg Traurig, LLP*<br>77 West Wacker Drive<br>Chicago, IL  60601<br>Fax: (312) 456-8435<br>Email: duttont@gtlaw.com;<br>hildebrandd@gtlaw.com |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 21, 2013, at Salinas, California.

Steven M. Patterson

Granberg Law Office
134 Central Avenue
Salinas, CA 93901

DOCUMENT11

Monterey Bay Military Housing v. Pinnacle Monterey  #M 1112710
PROOF OF SERVICE

MONTEREY BAY HOUSING v. PINNACLE MONTEREY     CASE NO. M 112710

## PROOF OF SERVICE

I am employed in the County of Monterey, State of California. I am over the age of eighteen years and not a party to the within action. My business address is 134 Central Avenue, Salinas, California.

On May 21, 2013, I caused the following documents entitled:

**PLAINTIFFS' MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO ENFORCE DEPOSITION SUBPOENAS FOR PRODUCTION OF BUSINESS RECORDS**

to be served on the party(ies) or its (their) attorney(s) of record in this action listed below by the following means:

☐ BY MAIL. By placing a true copy thereof in a sealed envelope (with postage affixed thereto) in the U.S. Mail at the Law Office of Ronald S. Granberg, 134 Central Avenue, Salinas, CA 93901. I am readily familiar with this firm's practice for collection and processing of correspondence for mailing with the U.S. Postal Service, and, in the ordinary course of business, correspondence would be deposited with the U.S. Postal Service in the same day it was placed for collection and processing.

☒ BY PERSONAL DELIVERY. By causing a true copy thereof to be delivered by hand at the address(es) shown below.

☐ BY OVERNIGHT DELIVERY. By causing a true copy to be sent by overnight mail, UPS delivery, or Federal Express delivery, with delivery charges to be billed to the Law Office of Ronald S. Granberg.

☐ BY EMAIL SERVICE. By causing a true copy thereof to be transmitted electronically, by "email", to the email addresses set forth below.

And addressed as follows:

William J. Goines, Esq.
*Greenberg Traurig, LLP*
1900 University Ave., 5th Floor
East Palo Alto, CA  94303
Fax: (650) 328-8508
Email: goinesw@gtlaw.com;
hamiltonc@gtlaw.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on May 21, 2013, at Salinas, California.

_____
Steven M. Patterson

Granberg Law Office
134 Central Avenue
Salinas, CA  93901

\\GLO-SBS2K8\Users Shared Folder\00-data\02-client\mbmh 6784\pos\pos052113c (goines).docx    Monterey Bay Military Housing v. Pinnacle Monterey #M 1112710
PROOF OF SERVICE