**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MONTEREY BAY MILITARY HOUSING, LLC, et al., | Case No.  14-cv-03953-BLF |
| Plaintiffs, | |
| v. | **ORDER ON MOTIONS *IN LIMINE*** |
| PINNACLE MONTEREY LLC, et al., | [Re:  ECF 260-86, 288, 290-91, 294] |
| Defendants. | |

This Order addresses the motions *in limine* submitted by both sides in the above-captioned action.  For the reasons explained below and on the record at the pretrial conference held from July 16 to 17, 2015, the motions are decided as follows:

Plaintiffs' Motion *in Limine* No. 1: GRANTED IN PART and DENIED IN PART.

Plaintiffs' Motion *in Limine* No. 2: GRANTED IN PART and DENIED IN PART.

Plaintiffs' Motion *in Limine* No. 3: GRANTED IN PART and DENIED IN PART.

Plaintiffs' Motion *in Limine* No. 4: GRANTED IN PART and DENIED IN PART.

Plaintiffs' Motion *in Limine* No. 5: GRANTED IN PART and DENIED IN PART.

Plaintiffs' Motion *in Limine* No. 6: GRANTED IN PART and DENIED IN PART.

Plaintiffs' Motion *in Limine* No. 7: DENIED.

Plaintiffs' Motion *in Limine* No. 8: DENIED.

Plaintiffs' Motion *in Limine* No. 9: DENIED.

Defendants' Motion *in Limine* No. 1: GRANTED IN PART and DENIED IN PART.

Defendants' Motion *in Limine* No. 2: DENIED.

Defendants' Motion *in Limine* No. 3: GRANTED IN PART and DENIED IN PART.

Defendants' Motion *in Limine* No. 4: DENIED IN PART and DEFERRED IN PART.

Defendants' Motion *in Limine* No. 5: GRANTED.

Defendants' Motion *in Limine* No. 6: DENIED.

Defendants' Motion *in Limine* No. 7: GRANTED.

Defendants' Motion *in Limine* No. 8: GRANTED IN PART and DENIED IN PART.

Defendants' Motion *in Limine* No. 9: GRANTED IN PART and DENIED IN PART.

Defendants' Motion *in Limine* No. 10: DENIED as moot.

Defendants' Motion *in Limine* No. 11: GRANTED IN PART and DENIED IN PART.

Defendants' Motion *in Limine* No. 12: DENIED.

Defendants' Motion *in Limine* No. 13: GRANTED.

Defendants' Motion *in Limine* No. 14: GRANTED IN PART and DENIED IN PART.

Defendants' Motion *in Limine* No. 15: DENIED as moot.

Defendants' Motion *in Limine* No. 16: DENIED.

Defendants' Motion *in Limine* No. 17: DENIED.

Defendants' Motion *in Limine* No. 18: DENIED as moot.

Defendants' Motion *in Limine* No. 19: GRANTED.

Defendants' Motion *in Limine* No. 20: DENIED.

Defendants' Motion *in Limine* No. 21: DENIED.

Defendants' Motion *in Limine* No. 22: GRANTED.

## I.   LEGAL STANDARDS

The parties' motions *in limine* largely concern the admissibility of evidence under Federal Rules of Evidence 401, 403, and 702.  Rule 401 provides that evidence is relevant if "it has a tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  However, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  A district court has "wide discretion" in making Rule 403 decisions but must exclude evidence of slight probative value if there is a modest likelihood that the evidence would cause unfair prejudice or mislead the jury.

2

1    *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992).

2         Federal Rule of Evidence 702 provides that a qualified expert may testify if "(a) the

3    expert's scientific, technical, or other specialized knowledge will help the trier of fact to

4    understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient

5    facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert

6    has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  In

7    *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), the Supreme Court held

8    that Rule 702 requires the district court to act as a gatekeeper to "ensure that any and all scientific

9    testimony or evidence admitted is not only relevant, but reliable."  In *Kumho Tire Co., Ltd. v.*

10   *Carmichael*, 526 U.S. 137, 147 (1999), the Supreme Court clarified that the "basic gatekeeping

11   obligation" articulated in *Daubert* applies not only to scientific testimony but to all expert

12   testimony.  The Supreme Court also made clear that the reliability inquiry is a flexible one, and

13   "whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a

14   particular case is a matter that the law grants the trial judge broad latitude to determine."  *Id.* at

15   153.  So long as an expert's methodology is sound and his opinions satisfy the requirements of

16   Rule 702, underlying factual disputes and how much weight to accord the expert's opinion are

17   questions for the jury.  *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).

18   **II.    PLAINTIFFS' MOTIONS *IN LIMINE***

19        Plaintiffs bring nine motions *in limine*, which the Court addresses in turn.

20   **1.    Plaintiffs' Motion *in Limine* No. 1 to "Exclude Arguments and Evidence**
     **Concerning Irrelevant or Otherwise Inadmissible Insurance Issues."  GRANTED**
21   **IN PART and DENIED IN PART.**

22        Plaintiffs seek to exclude reference to all other insurance matters that are not connected to

23   the Master Insurance Program ("MIP") administered by Defendants, through which Defendants

24   procured property and general liability insurance for the parties' military housing projects.  While

25   the MIP is at the heart of many of Plaintiffs' claims, Plaintiffs seek to exclude reference to each of

26   the following subjects on the ground that each is irrelevant to the MIP and would potentially

27   confuse the jury: (1) construction-related insurance coverage at the military housing projects; (2)

28   Plaintiffs' consideration of a potential insurance captive of their own to take over insuring the

United States District Court
Northern District of California

United States District Court
Northern District of California

projects; and (3) argument or evidence that the projects' asset managers approved the MIP.  Pls.' MIL #1, ECF 260.  Defendants counter that evidence on each of these subjects is relevant to Plaintiffs' knowledge of how such insurance programs work, their awareness of the alleged overcharges under the MIP, Plaintiffs' unclean hands, and Defendants' claims for breach of fiduciary duties.  Defs.' Opp. #1, ECF 331.

The challenged evidence is minimally relevant to the parties' claims but is highly relevant to Defendants' statute of limitations defense, which this Court has determined must be tried to a jury.  Am. Order on Summ. J. ("SJ Order") at 37-40, ECF 397.  Defendants contend that Plaintiffs were aware of the operation of the MIP and the alleged overcharges thereunder long before they brought their claims.  Plaintiffs disclaim such awareness.  Defendants must therefore be afforded an opportunity to cross-examine Plaintiffs' witnesses concerning these issues.  As such, and for the reasons stated on the record, Plaintiffs' Motion *in Limine* No. 1 is GRANTED with respect to introduction of the challenged evidence in any party's case in chief but DENIED with respect to Defendants' use of the evidence to cross-examine Plaintiffs' witnesses concerning notice and knowledge of the alleged MIP fraud.

### 2. Plaintiffs' Motion *in Limine* No. 2 to "Exclude Argument and Evidence Related to Irrelevant Conduct and Motives by Clark Realty Capital LLC."  GRANTED IN PART and DENIED IN PART.

Plaintiffs seek to exclude evidence concerning Clark Realty Capital LLC's ("Clark Realty") internal audits of the Clark entities that performed construction and development services at the parties' Monterey and Irwin projects on the ground that such evidence is irrelevant to the claims and defenses in this action.  Pls.' MIL #2 at 2-3, ECF 261.  Defendants contend that the audits reveal that Clark Realty overlooked billing and conduct irregularities committed by the Clark entities similar to the ones that Plaintiffs identify as the basis for terminating defendant American Management Services California Inc.'s ("AMSC") property management agreements ("PMAs") at Monterey and Irwin.  Defs.' Opp. #2 at 2-3, ECF 339.  Such evidence thus has direct bearing on Defendants' counterclaims for breach of the implied covenant of good faith and fair dealing.  *Id.* at 3-4.  Plaintiffs' Motion *in Limine* No. 2 is accordingly DENIED with respect to Clark Realty's internal audits, but the evidence shall be limited to evidence of overlooked

4

United States District Court
Northern District of California

1   irregularities.

2       Plaintiffs also seek to exclude reference to or suggestions that Plaintiffs, Clark Realty, or

3   any of their affiliates intend to assume or take over property management duties at the Monterey

4   and Irwin projects.  Pls.' MIL #2 at 3-4.  The facts have changed since the filing of the motions *in*

5   *limine*.  As of July 13, 2015, a third party has taken over property management duties at the

6   Monterey and Irwin projects.  Although the parties disputed on the record whether the new

7   property manager is affiliated with or controlled by Clark Realty, the Court finds such disputes

8   inapposite to the issues in this action.  Plaintiffs' Motion *in Limine* No. 2 to exclude reference to

9   Plaintiffs, Clark Realty, or their affiliates taking over property management duties at the Monterey

10  and Irwin projects is therefore GRANTED.

11      **3.  Plaintiffs' Motion *in Limine* No. 3 to "Exclude Arguments and Evidence Related**
12  **to Unrelated Military Projects and Pursuits with Pinnacle."  GRANTED IN**
     **PART and DENIED IN PART.**

13      Plaintiffs in their third motion *in limine* seek to exclude reference to the parties' other

14  agreements and pursuits that Plaintiffs contend are not relevant to the projects and contracts

15  implicated in this action.  Specifically, Plaintiffs move to preclude all reference to a 2001 Term

16  Sheet between Clark Realty and American Management Services ("AMS") and to Clark Pinnacle

17  Family Communities LLC ("CPFC"), an entity formed by Clark and AMS in 2001 to pursue

18  military housing contracts.  Pls.' MIL #3 at 2-4, ECF 262.  As the Court previously found, the

19  2001 Term Sheet is not binding, by its own terms.  Corrected Order Denying Mot. to Dissolve

20  Prelim. Inj. ("Inj. Order") at 16-17, ECF 169.  Furthermore, the Court denied Defendants' belated

21  motion to introduce a claim based upon the CPFC relationship.  Order Denying Mot. for Leave to

22  Conform Evidence to Pleadings, ECF 352.  The challenged evidence is therefore of minimal

23  relevance to the parties' claims but is relevant to understanding their complex relationship.  This

24  portion of Plaintiffs' Motion *in Limine* No. 3 is therefore DENIED, but the evidence of the Term

25  Sheet and of CPFC is limited to general background information to explain the parties'

26  relationship.

27      Plaintiffs also seek to exclude reference to other project bids submitted by CPFC,

28  particularly a successful bid at the Pacific Beacon naval project where Defendants' affiliates were

subsequently terminated from the project.  Plaintiffs assert that evidence relating to the Pacific

Beacon project is irrelevant to any claim or defense in this action and that Defendants' apparent

assertion that the Pacific Beacon termination was part of a concerted effort to oust Defendants at

the various Clark-Pinnacle projects is unproven.  Pls.' MIL # 4-5.  Despite Defendants' arguments

to the contrary, the Court agrees with Plaintiffs.  The probative value of the evidence regarding the

Pacific Beacon project is miniscule and greatly outweighed by the undue consumption of time that

presenting and distinguishing the features of this project would necessitate.  Fed. R. Evid. 403.  As

such, the portion of Plaintiffs' Motion *in Limine* No. 3 addressed to the Pacific Beacon project is

GRANTED.

### 4. Plaintiffs' Motion *in Limine* No. 4 to "Exclude Specific Hearsay and Otherwise Inadmissible Evidence."  GRANTED IN PART and DENIED IN PART.

Plaintiffs' fourth motion *in limine* contains three parts.

First, Plaintiffs seek to exclude reference to the "Executive Summary of Clark/Pinnacle

Lockbox Review" prepared by third party consultant Jones Lang LaSalle ("JLL") and the

Memorandum prepared by Army officials Ivan Bolden and Rhonda Hayes, which summarizes the

Clark/Pinnacle Lockbox Review.  Plaintiffs assert that these documents are hearsay without

sufficient indicia of reliability to allow admission into evidence.  Pls.' MIL #4 at 1-2, ECF 263.

Defendants urge that these documents are reliable and that they are admissible public records

under Federal Rule of Evidence 803(8) or business records under Rule 803(6).  Defs.' Opp. #4 at

2-4, ECF 342.  Plaintiffs have, however, provided the Court with evidence that the Executive

Summary and Memorandum were preliminary, repudiated by the Army, and deemed

untrustworthy by them.  As such, Plaintiffs' Motion *in Limine* No. 4 to exclude reference to these

documents is GRANTED.

Second, Plaintiffs seek to exclude as hearsay emails and other out of court statements from

Mr. Glenn Ferguson and Mrs. Gerri Ferguson to defendant Stanley Harrelson.  Pls.' MIL #4 at 2-

4.  Defendants indicated at the pretrial conference that they do not intend to offer Mrs. Ferguson's

emails into evidence and Plaintiffs' motion is therefore GRANTED on that ground.  Mr.

Ferguson's out of court statements were made at a time when he was employed as senior manager

6

of Clark Realty and president of Clark Realty Builders.  As such, they are admissible as party-opponent statements under Rule 801(d)(2)(D), and Plaintiffs' motion as to these statements is accordingly DENIED.

Finally, Plaintiffs seek to exclude as hearsay a March 7, 2008 email from Deb Stratton to Chuck McDaniel, Tate McCoy, and Kay Lynn Keimig concerning an upcoming meeting with Plaintiffs to discuss the MIP.  Pls.' MIL #4 at 4-5.  Defendants argue that the email and testimony related to the email is admissible as Ms. Stratton's then-existing state of mind and relevant to her lack of intent to deceive Plaintiffs concerning the MIP.  *See* Defs.' Opp. #4 at 5.  The Court agrees with Defendants and accordingly DENIES this aspect of Plaintiffs' Motion *in Limine* No. 4.

### 5.  Plaintiffs' Motion *in Limine* No. 5 to "Exclude Improper Attacks and Legal Arguments."  GRANTED IN PART and DENIED IN PART.

Plaintiffs seek to exclude (1) all attacks on counsel and auditors; (2) argument that actual wrongdoing by Defendants would have resulted in criminal charges; (3) reference to the availability of treble damages and attorneys' fees under 18 U.S.C. §§ 1961 *et seq.* ("RICO"); and (4) any reference to privileged communications.  Pls.' MIL #5, ECF 264.

Defendants agree that no party should be permitted to argue that wrongdoing would have resulted in criminal charges or to reference treble damages and attorneys' fees available under RICO.  Defs.' Opp. #5 at 2-3, ECF 340.  Plaintiffs' motion on those issues is accordingly GRANTED.

As to attacks on counsel and auditors, the Court GRANTS Plaintiffs' motion with respect to attacks on counsel but DENIES the motion with respect to the forensic audits at Monterey and Irwin and the alleged improper motivation for those audits, which the Court finds relevant to Defendants' claims for breach of the covenant of good faith and fair dealing.

Finally, Defendants acknowledge that they will not invade attorney-client privilege but assert that Plaintiffs' privilege logs are relevant to Defendants' statute of limitations defense and, in particular, to show when Plaintiffs became aware of the alleged MIP overcharges.  Defs.' Opp. #5 at 3-4.  Defendants point to a May 15, 2009 entry on the log, which indicates that Mr. Jenkins and Mr. Caputo called counsel "seeking/giving legal advice regarding Pinnacle insurance

7

United States District Court
Northern District of California

1  program." *Id.* at 3.  This entry, by itself, is of little probative value to Defendants' statute of

2  limitations defense, as Plaintiffs' knowledge of the fraud alleged in this action can only be probed

3  by knowing the substance of Mr. Jenkins's and Mr. Caputo's communication with counsel.  As the

4  Court noted on the record, it would be fundamentally unfair to allow the introduction of a

5  document that would require Plaintiffs to waive their attorney-client privilege to defend

6  themselves.  As such, Plaintiffs' Motion *in Limine* No. 5 is GRANTED with respect to attorney-

7  client communications and with respect to Defendants' intended use of Plaintiffs' privilege log.

8  **6.  Plaintiffs' Motion *in Limine* No. 6 to "Exclude the Report, Opinions, and
   Testimony of Defendants' Expert Jeff George."  GRANTED IN PART and
9  DENIED IN PART.**

10  Plaintiffs seek to exclude the report, opinions, and testimony of defense expert witness Jeff

11  George, an experienced fraud investigator, who has been designated to opine regarding: (1) the

12  deficiencies in the analysis of AMS's manipulation of work order data conducted by Plaintiffs'

13  expert Louis Dudney; (2) the manner in which AMS employees used the Yardi software system

14  that was used to maintain work order data; and (3) that the PMAs at Monterey and Irwin did not

15  require the submission of certain information.  Pls.' MIL #6, ECF 265.

16  Plaintiffs assert that Mr. George's criticism of Mr. Dudney's analysis is unreliable because

17  it is based upon "pure speculation" concerning "potential alternative explanations" for the work

18  order data inconsistencies that Mr. Dudney uncovered.  *Id.* at 2-3.  Although it is undisputed that

19  Mr. George did not test these potential alternative explanations for himself, Defendants have

20  identified sufficient factual foundation for his opinion, which include his review of documents

21  produced in discovery, technical descriptions of the Yardi system, and interviews with AMS

22  employees.  Defs.' Opp. #6 at 3-5, ECF 320.  Of course, at trial, Defendants must place this

23  foundation into evidence and establish that each alternative is real and not speculative.  Whether

24  these alternative explanations should have been considered by Mr. Dudney and whether they

25  would have had any effect on Mr. Dudney's analysis are issues that go to the weight of Mr.

26  Dudney's and Mr. George's testimony and are better addressed on cross-examination.  Plaintiffs'

27  Motion *in Limine* No. 6 is therefore DENIED with respect to Mr. George's opinions criticizing

28  Mr. Dudney's analysis of the work order data.

United States District Court
Northern District of California

1    Similarly, although Mr. George is not himself a software engineer, he has spent

2    considerable time learning the Yardi system and the jury may benefit from a description of the

3    system's functionality from a lay perspective.  Mr. George may accordingly offer high level

4    testimony concerning the operation of the Yardi system—i.e., how employees would use the

5    system—but may not offer any technical explanation of the software.  As addressed on the record,

6    this high level explication includes testimony concerning a script change to the Yardi system in

7    2010 that Mr. George opines should have been considered and factored into Mr. Dudney's

8    analysis.  This aspect of Plaintiffs' motion is thus DENIED.

9    Finally, some language in Mr. George's report suggests that he is opining regarding the

10   legal conclusion of what the PMAs require in terms of work order data.  *See* Pls.' MIL #6 Exh. 1

11   (George Report) at 17, 18, 26.  Defendants assert that his opinion was not intended to trespass on

12   contract interpretation and that Mr. George will not offer any opinions on legal conclusions at

13   trial.  As such, the Court GRANTS Plaintiffs' Motion *in Limine* No. 6 with respect to Mr.

14   George's opinions concerning the interpretation of the PMAs.

15       **7.  Plaintiffs' Motion *in Limine* No. 7 to "Exclude the Report, Opinions, and
16           Testimony of Defendants' Expert Brian Potter."  DENIED.**

17   Plaintiffs seek to exclude the opinions of Defendants' expert witness Brian Potter

18   pertaining to fraudulent transfer and the "investment value" of the PMAs at the Monterey and

19   Irwin projects.  Plaintiffs contend that the former is an unreliable legal opinion from an

20   inexperienced expert and that the latter is irrelevant.  Pls.' MIL #7, ECF 268.  Plaintiffs have

21   alleged that a 2014 transaction between AMS and Hunt Companies, Inc. involved a transfer of

22   substantially all of AMS's assets, rendering it insolvent and judgment-proof.  Defendants offer

23   Mr. Potter to opine that AMS remains solvent and, indeed, he is qualified to offer such an opinion.

24   Defs.' Opp. #7 at 1-2.  Defendants moreover clarify that Mr. Potter is only being offered to rebut

25   the fraudulent transfer analysis of Plaintiffs' expert, Louis Dudney, and that Mr. Potter will not

26   testify concerning the legal standard for a fraudulent transfer or whether the Hunt transaction

27   satisfies that standard.  *Id.* at 2-4.  With that understanding, the Court DENIES Plaintiffs' Motion

28   *in Limine* No. 7 with respect to Mr. Potter's opinion regarding AMS's solvency.

United States District Court
Northern District of California

As to Mr. Potter's opinion regarding the investment value of the PMAs, Defendants contend that this evidence is relevant to their claims that Plaintiffs breached their duty of good faith and fair dealing as well as to Plaintiffs claim for damages and any setoff that may be applicable to that claim.  *Id.* at 4.  Although the Court will not preclude Defendants from offering this evidence, Defendants are aware that placing the value of the PMAs at issue to suggest Plaintiffs' bad faith, improper motive, and commercial unreasonableness may open the door to rebuttal evidence of Plaintiffs' good faith that, as discussed below, the Court will exclude from Plaintiffs' case in chief.  With that proviso, Plaintiffs' Motion *in Limine* No. 7 is DENIED with respect to Mr. Potter's opinion concerning the value of the PMAs.

> **8. Plaintiffs' Motion *in Limine* No. 8 to "Exclude the Report, Opinions, and Testimony of Defendants' Expert David Stegall."  DENIED.**

Plaintiffs move to exclude the opinions and testimony of defense expert David Stegall on the ground that his opinions concerning customary practices and use of a MIP and the duties and responsibilities of an insurance risk management administrator are either based upon cherry picked facts or lack factual foundation altogether.  Pls.' MIL #8, ECF 269.  On review of Mr. Stegall's report, the Court concludes that he has disclosed sufficient factual basis for his opinions.  That he may not have considered evidence that Plaintiffs would deem "highly relevant" goes to the weight and credibility of his opinion.  Plaintiffs had ample opportunity to depose Mr. Stegall and can readily point out the evidentiary flaws in his analysis on cross-examination.

The Court does agree with Plaintiffs that Mr. Stegall has disclosed no authority to support his understanding of the "usual and customary practice" in the industry.  *Id.* at 4-5.  It is undisputed that Mr. Stegall has sufficient professional experience to testify regarding the customary practice in the insurance industry.  *See* Defs.' Opp. #8 at 4, ECF 323.  As such, the Court will allow Mr. Stegall to testify on this subject but will expect Defendants to lay a proper foundation for this testimony at trial.

Finally, Plaintiffs appear to have elicited testimony from Mr. Stegall during his deposition regarding individual parties' intent and the proper interpretation of the PMAs.  Defendants acknowledge that Mr. Stegall will not offer such improper testimony at trial.  The Court therefore

1    need only reiterate that an expert witness may not testify concerning any party's state of mind or

2    the interpretation of the PMAs.

3         Based on the foregoing, Plaintiffs' Motion *in Limine* No. 8 is DENIED.

### 9. Plaintiffs' Motion *in Limine* No. 9 to "Exclude the Report, Opinions, and Testimony of Defendants' Expert Roberta Garland." DENIED.

6         Finally, Plaintiffs move to exclude the opinions and testimony of defense expert Roberta

7    Garland, who is offered to rebut the testimony of Plaintiffs' expert, Nancy Watkins, regarding the

8    allocation of MIP costs made by AMS and its insurance broker, Lockton.  Plaintiffs contend that

9    Ms. Garland, an experienced actuary in the insurance industry, offers unreliable opinions

10   unsupported by evidence or by her own expertise.  Pls.' MIL #9, ECF 271.  As discussed below,

11   the parties' experts dispute whether an actuarial approach was necessary or appropriate in

12   determining the proper allocation of costs under the MIP.  On that subject, the Court agrees with

13   Defendants that Ms. Garland is qualified to opine that actuarial analysis is not necessary within the

14   MIP context.  Defs.' Opp. #9 at 2-3, ECF 338.  With respect to Ms. Garland's failure to consider

15   each allocation year or certain "relevant" data, these are challenges to the sufficiency of Ms.

16   Garland's sample size and go to the weight of her opinion and not its reliability.  Plaintiffs'

17   Motion *in Limine* No. 9 is accordingly DENIED.

## III.   DEFENDANTS' MOTIONS IN LIMINE

19        Defendants bring twenty-two motions *in limine*, which the Court addresses in turn.

### 1. Defendants' Motion *in Limine* No. 1 to "Exclude References to Other Civil and Criminal Legal Proceedings." GRANTED IN PART and DENIED IN PART.

22        Defendants move to exclude reference to four other legal actions involving the parties: (1)

23   the parties' litigation in Georgia involving the Fort Benning and Fort Belvoir projects ("Georgia

24   Action"), which was partially resolved on summary judgment and affirmed on appeal; (2) a recent

25   fraudulent transfer action that Plaintiffs filed in Gwinnett County, Georgia; (3) the guilty plea by

26   former AMS maintenance director Eddie Hudspeth, who pled guilty to soliciting and accepting

27   kickbacks from vendors at Fort Belvoir; and (4) ongoing grand jury investigation proceedings

28   involving other current and former employees of Defendants.  Defs.' MIL #1, ECF 266.

United States District Court
Northern District of California

1    Plaintiffs indicated that they do not intend to introduce evidence of the Gwinnett County

2    action or of the ongoing criminal investigation.  Pls.' Opp. #1 at 1 n.1, ECF 329.  Defendants'

3    motion is therefore GRANTED as to these two subjects, and neither party may reference these

4    matters at trial.

5    On the subject of the Georgia Action, two orders from that action are implicated: a

6    summary judgment order by the court and a discovery and sanctions order compelling Defendants

7    to produce insurance-related documents in that action.  On balance, the Court finds that the

8    Georgia court's summary judgment order is highly relevant to RICO predicate acts, Plaintiffs'

9    good faith in rebuttal to Defendants' claims of breach of the covenant of good faith and fair

10   dealing and breach of fiduciary duty, and of Defendants' motive to engage in the allegedly

11   fraudulent Hunt transaction.  Furthermore, the probative value of the order to the aforementioned

12   issues outweighs any prejudice to Defendants, particularly with appropriate limiting instructions to

13   the jury.  Defendants' Motion *in Limine* No. 1 is accordingly DENIED with respect to the

14   summary judgment order from the Georgia Action.  Plaintiffs shall identify specific RICO

15   predicate acts to which the order is relevant.  Defendants shall prepare appropriate limiting

16   instructions so that the jury understands that the order is not being used to prove liability in this

17   case *per se*, but that it is only being used as a defense to the good faith and fair dealing claim and

18   as evidence of motive for the Hunt transaction and other RICO predicate acts.

19   At the pretrial conference, the parties further disputed the admissibility of a discovery

20   sanctions order imposed against Defendants by the Georgia court; a subject that neither party

21   briefed, nor did any party provide a copy of the disputed order.  Based on the parties'

22   representations on the record, there appears to have been a December 12, 2012 consent order by

23   which Defendants agreed to produce the insurance-related documents, followed by a later

24   sanctions order.  The Court finds the December 12, 2012 consent order relevant and probative of

25   the timing of Plaintiffs' knowledge of the alleged MIP fraud, which rebuts Defendants' statute of

26   limitations defense.  The later order imposing monetary sanctions must be excluded because the

27   unfair prejudice to Defendants outweighs its probative value.  Fed. R. Evid. 403.  Accordingly,

28   Defendants' Motion *in Limine* No. 1 is DENIED with respect to the Georgia court's December 12,

United States District Court
Northern District of California

2012 consent order regarding production of documents.  Defendants shall prepare an appropriate limiting instruction that the jury should consider the order only in connection with Defendants' statute of limitations defense and Plaintiffs' rebuttal to that defense.  Counsel for individual defendants Stanley Harrelson and John Goodman may also prepare a limiting instruction that the order shall not be considered to implicate the individual defendants in any wrongful concealment.

Finally, Plaintiffs contend—and the Court agrees—that the Hudspeth plea is relevant to Plaintiffs' RICO claim and is admissible under Federal Rule of Evidence 803(22).  The Court finds that the plea is probative of Plaintiffs' RICO claim and may be admitted with a limiting instruction that the jury may only consider it as evidence of a pattern of racketeering activity in connection with Plaintiffs' RICO claim.  Defendants' Motion *in Limine* No. 1 is therefore DENIED with respect to the Hudspeth plea and Defendants shall draft an appropriate limiting instruction.

### 2. Defendants' Motion *in Limine* No. 2 to "Exclude Evidence of Alleged Misconduct at Fort Benning or Fort Belvoir."  DENIED.

Defendants seek to exclude evidence relating to the alleged misconduct by Defendants' East Coast affiliates at Fort Benning or Fort Belvoir, which is the basis of the parties' lawsuit in Georgia.  Defendants contend that the evidence of misconduct at those other projects is irrelevant, highly prejudicial, confusing, and invites the jury to infer that Defendants acted in conformity therewith at the Monterey and Irwin projects.  Defs.' MIL #2, ECF 267.  Plaintiffs counter that this evidence is probative and relevant to the enterprise and pattern of racketeering activity elements of their RICO claims.  Pls.' Opp. #2, ECF 306.  The Court agrees with Plaintiffs and further finds that the misconduct at Fort Benning and Fort Belvoir is not precluded by Federal Rule of Evidence 404(b).  In any case, any undue prejudice to Defendants can be mitigated by limiting the purposes for which this evidence may be used and by requiring a limiting instruction. Defendants' Motion *in Limine* No. 2 is therefore DENIED with the caveat that evidence of the misconduct at Fort Benning and Fort Belvoir may only be used to prove Plaintiffs' RICO claim. Defendants shall prepare an appropriate limiting instruction to that effect.

**3.  Defendants' Motion *in Limine* No. 3 to "Exclude Evidence that the Army Supports Plaintiffs' Case."  GRANTED IN PART and DENIED IN PART.**

Defendants in their third motion *in limine* seek to exclude any reference to the Army's support of Plaintiffs' case or the removal of AMSC from its position as property manager for the Monterey and Irwin projects.  Defendants also request that no uniformed Army personnel be allowed to sit at counsel table or introduced to the jury.  Defs.' MIL #3, ECF 270.

Plaintiffs indicate that they do not intend to have any uniformed officials seated at counsel table, nor do they presently intend to call any witnesses who will be wearing a uniform.  Pls.' Opp. #3 at 4 n.2, ECF 307.  The Court accordingly GRANTS this portion of Defendants' motion.

As to references to the Army's support, Plaintiffs assert that such evidence is relevant to rebut Defendants' assertions of bad faith and to provide context for Stanley Harrelson's statement to the Army that "there would be 'nothing left to collect' at the end of the litigation" which, in turn, is relevant to Plaintiffs' allegation of fraudulent transfer as a predicate RICO act.  *Id.* at 2-4. The Court, however, finds that the imprimatur of Army "approval" or "support" on this litigation is not probative of any of Plaintiffs' claims and is so highly prejudicial that it must be excluded from Plaintiffs' case in chief.  With that said, the requirement for Army consent to certain actions may be introduced to establish background context for certain evidence and is certainly relevant to rebut Defendants' claims for breach of the covenant of good faith and fair dealing.  As such, Defendants' Motion *in Limine* No. 3 is GRANTED with respect to reference to the Army's support of this litigation in Plaintiffs' case in chief but DENIED with respect to Plaintiffs' use of this evidence in rebuttal to Defendants' bad faith claim.  To a very limited extent, Plaintiffs' witness Joseph F. Calcara may describe the context in which Mr. Harrelson made the alleged "nothing left to collect" statement to him but may not testify to the Army's approval of Plaintiffs' actions in general in Plaintiffs' case in chief.  Plaintiffs shall moreover have leave to revisit this ruling on rebuttal should Defendants attempt to make an emotional appeal to the jury regarding the impact of the litigation on soldiers and residents at the projects.

1

2

**4.  Defendants' Motion *in Limine* No. 4 to "Exclude Argument of Purported Spoliation."  DENIED IN PART and DEFERRED IN PART.**

3

Defendants move to exclude any reference or argument that they spoliated or destroyed

4 hard copy work orders with fraudulent intent at the Monterey and Irwin projects on the ground

5 that there has been no proof of spoliation and that references to such alleged spoliation would be

6 unfairly prejudicial.  Defs.' MIL #4, ECF 272.  Defendants' motion, once unpacked, addresses

7 three distinct but related issues: (1) whether Plaintiffs should be permitted to introduce evidence

8 that there are missing hard copy work orders; (2) whether Plaintiffs may argue that the missing

9 hard copies evince Defendants' intent to defraud; and (3) whether the destruction of the hard copy

10 work orders constitutes spoliation sufficient to warrant an adverse inference instruction.  As to the

11 first two issues, the Court agrees with Plaintiffs that evidence that Defendants turned off controls

12 in the Yardi system and destroyed hard copy work orders is relevant to Defendants' intent to

13 defraud and may be presented and argued to the jury.  *See* Pls.' Opp. #4 at 1-3, ECF 316.  The

14 Court therefore DENIES Defendants' motion insofar as it seeks to exclude evidence of missing

15 hard copy work orders.  As to whether the term "spoliation" (and all of its connotations) can be

16 attached to the work order destruction, the Court DEFERS ruling on the propriety of a spoliation

17 or adverse inference instruction because there is no evidence before the Court on which to base

18 such a determination.  *See id.* at 4-5.  In the meantime, the parties may not use the term

19 "spoliation" in connection with the missing hard copy work orders.

20

**5.  Defendants' Motion *in Limine* No. 5 to "Bar Argument that Residents' Lives Were Put in Danger."  GRANTED.**

21

22

Defendants seek to bar argument that the alleged work order manipulation at the Monterey

23 and Irwin projects endangered resident lives.  Defs.' MIL #5, ECF 273.  The Court finds that

24 characterizations that the work order data manipulation at these projects created life-threatening

25 conditions or anything similar are potentially misleading and likely to lack foundation and

26 therefore lack any probative value in contrast to the high likelihood that such characterizations

27 would enflame the passions of the jury and unfairly prejudice Defendants.  Thus, on balance, such

28 arguments must be excluded.  Fed. R. Evid. 403.  Plaintiffs may, however, provide factual

United States District Court
Northern District of California

United States District Court
Northern District of California

evidence allowing the jury to understand the nature of the affected work orders and the

designations/categorizations attached to those work orders, such as whether they are urgent or

emergencies.  With that proviso, Defendants' Motion *in Limine* No. 5 is GRANTED.

### 6. Defendants' Motion *in Limine* No. 6 to "Exclude Evidence of Alleged Work Order Misconduct Outside the Relevant Time Period."  DENIED.

Defendants seek in their sixth motion *in limine* to exclude evidence concerning alleged

work order misconduct after 2008 at the Irwin project and after 2010 at the Monterey project on

the ground that work order data manipulation is irrelevant past those dates because the Irwin and

Monterey PMAs were respectively amended in 2008 and 2010 to remove work order data as a

metric for AMSC's incentive fees. Defs.' MIL #6, ECF 274.  Plaintiffs dispute the assertion that

work order performance became completely irrelevant to AMSC's incentive payments after the

amendments to the PMAs and also contend that Defendants' continued manipulation of work

order data evinces intent to defraud and to conceal past fraud. Pls.' Opp. #6, ECF 322.  The Court

agrees with Plaintiffs and accordingly DENIES Defendants' Motion *in Limine* No. 6.

### 7. Defendants' Motion *in Limine* No. 7 to "Exclude Reference to Cash Deposits in Bank Accounts of AMS Employees and Vendor Donations to Extravaganza."  GRANTED.

Based on the Court's ruling on summary judgment, Defendants' Motion *in Limine* No. 7 is

GRANTED.  *See* SJ Order 40-42, 43-44.

### 8. Defendants' Motion *in Limine* No. 8 to "Exclude Improper Opinion Testimony From Lay Witnesses."  GRANTED IN PART and DENIED IN PART.

Defendants seek to exclude five categories of lay opinions that Plaintiffs have elicited from

witnesses: (1) Jennifer Fraser's opinion regarding overcharges by vendor Mainscape; (2) Jodi

George's opinion that the pricing of vendors Five Star and Mainscape "seemed high"; (3) Joanne

Garrett's opinion that the historical allocation model for the MIP was not fair; (4) Joanne Garrett's

opinion that Lockton (Defendants' insurance broker) was being overcompensated; and (5) Melissa

Meyer's opinion that she was instructed by upper management to falsify work order data and that

she knew the data was being falsified.  Defs.' MIL #8, ECF 276.  Defendants withdrew their

objections to Joanne Garrett's two opinions and Melissa Meyer's opinion on the record and

United States District Court
Northern District of California

1   Defendants' motion on those opinions is DENIED accordingly.  In light of the Court's ruling on

2   summary judgment, the Court GRANTS the remainder of Defendants' Motion *in Limine* No. 8

3   with respect to Jennifer Fraser's and Jodi George's opinions regarding vendor relationships.  *See*

4   SJ Order 40-42, 43-44.

5   **9.   Defendants' Motion *in Limine* No. 9 to "Exclude Any Reference, Evidence, or Testimony Concerning Prior Misconduct of David Krull."  GRANTED IN PART and DENIED IN PART.**

6

7       Defendants seek to exclude reference to prior misconduct by former AMS employee David

8   Krull, who was fired in 2008 for setting up a fictitious vendor account and diverting AMS vendor

9   payments to himself.  The specific instances of prior misconduct include this fictitious vendor

10  account and a 2004 charge of sexual harassment.  Defs.' MIL #9, ECF 277.  Plaintiffs indicated

11  that they do not presently plan to introduce evidence of the sexual harassment allegation.  Pls.'

12  Opp. #9 at 1 n.1, ECF 332.  In any case, the Court finds that that incident lacks probative value

13  and is unfairly prejudicial to Defendants.  Defendants' Motion *in Limine* No. 9 to exclude

14  evidence of the 2004 sexual harassment allegation against Mr. Krull is therefore GRANTED.

15      With regard to evidence of Mr. Krull's embezzlement from AMS, Defendants

16  acknowledge that such evidence has direct bearing on Mr. Krull's character for truthfulness and

17  modified their motion at the pretrial conference to seek exclusion only of extrinsic evidence of

18  prior misconduct.  This motion would therefore pertain only to an affidavit and confidential

19  agreement that Mr. Krull signed in June 2008 admitting to his misconduct and agreeing to repay

20  the funds to AMS.  Plaintiffs aver that the confidential agreement also contains provisions that are

21  relevant to Mr. Krull's credibility as a witness, as well as to the alleged MIP fraud.  *See generally*

22  Pls.' Opp. #9.  On inspection of the agreement, the Court agrees.  Defendants' Motion *in Limine*

23  No. 9 is therefore DENIED with respect to evidence concerning Mr. Krull's prior embezzlement,

24  including the confidential agreement that he signed in 2008.

25  **10. Defendants' Motion *in Limine* No. 10 to "Strike Improperly Added Breach of Contract Claim and to Exclude Any Evidence Related Thereto."  DENIED as moot.**

26

27      All parties apparently agree that Plaintiffs have not alleged a breach of contract claim in

28  connection with the PMAs.  As such, this motion is DENIED as moot.  As the Court stated on the

1   record, evidence of the Hunt transaction is to be introduced only in connection with Plaintiffs'

2   RICO claims and Defendants are free to object if the testimony elicited at trial appears to be going

3   in another direction.

**11. Defendants' Motion *in Limine* No. 11 to "Exclude Reference to or Evidence of 'Ghost Letter' and AMS October 2002 Response."  GRANTED IN PART and DENIED IN PART.**

6       All parties agreed on the record at the pretrial conference that the so-called "ghost letter,"

7   an anonymous letter written in 2002 by a purported AMS employee, should be excluded as

8   inadmissible hearsay.  They likewise agreed that AMS's October 2002 response to the ghost letter

9   is relevant and admissible.  Accordingly, Defendants' Motion *in Limine* No. 11 is GRANTED

10  with respect to the ghost letter and DENIED with respect to AMS's response.

**12. Defendants' Motion *in Limine* No. 12 to "Exclude the 3/9/2005 Robert Trompeter Memo and His Testimony About the Memo."  DENIED.**

13      In light of Defendants' acknowledgment on the record that the subject of this motion is

14  better handled on cross-examination, the Court DENIES Defendants' Motion *in Limine* No. 12.

**13. Defendants' Motion *in Limine* No. 13 to "Exclude Improper Character Evidence Attacking AMS's Site Manager Rick Wimer."  GRANTED.**

17      In light of the Court's ruling on summary judgment, *see* SJ Order 40-42, 43-44, Plaintiffs

18  have withdrawn their opposition to this motion.  Defendants' Motion *in Limine* No. 13 is

19  accordingly GRANTED.

**14. Defendants' Motion *in Limine* No. 14 to "Exclude Evidence Attacking Character of AMS Managers at Monterey."  GRANTED IN PART and DENIED IN PART.**

22      Defendants in their fourteenth motion *in limine* seek to exclude evidence and argument

23  concerning (1) emails and related deposition testimony regarding banter that AMS Investment

24  Manager Shawn Somerville engaged in with other employees including Community Director

25  Stacia Schuster; and (2) an August 11, 2010 anonymous letter to Clark Realty alleging that the

26  AMS management staff at Monterey engaged in "sex parties" and other improper behavior.  Defs.'

27  MIL #14, ECF 282.  Plaintiffs indicated both in their papers and on the record that they do not

28  intend to introduce the 2010 letter or emails including Michelle Calloway into evidence.  Pls.'

Opp. #14 at 4 n.1, ECF 313.  Plaintiffs contend, however, that the emails between Mr. Somerville and Ms. Schuster evidence a close personal relationship that is relevant to their credibility and possible motive to exonerate one another of wrongdoing.  *Id.* at 2-3.  The Court finds that Mr. Somerville's and Ms. Schuster's relationship is probative of their credibility and of the alleged conspiracy to defraud Plaintiffs, but that the emails documenting this relationship are highly likely to enflame the passions of the jury and unfairly prejudice Defendants.  Plaintiffs may accordingly question Mr. Somerville and Ms. Schuster regarding their relationship and emails but may not introduce the emails into evidence unless they become necessary for impeachment purposes.  Defendants' Motion *in Limine* No. 14 is accordingly GRANTED as to all of the evidence that Defendants seek to exclude.  To the extent the motion was intended to preclude any reference, argument, or questioning concerning Mr. Somerville's and Ms. Schuster's relationship, that aspect of the motion is DENIED.

### 15. Defendants' Motion *in Limine* No. 15 to "Exclude Evidence of Personal Finances of Goodman and Harrelson."  DENIED as moot.

The parties have agreed that Plaintiffs may introduce evidence of the individual defendants' net worth and relevant assets (namely, real estate assets).  Plaintiffs have agreed that they will not refer to "lifestyle" or personal assets (such as cars, yachts, vacations, etc.) that might be owned by the individual defendants.  With that agreement, the individual defendants have withdrawn their Motion *in Limine* No. 15, including the request to bifurcate, and the Court accordingly DENIES the motion as moot.

### 16. Defendants' Motion *in Limine* No. 16 to "Exclude Evidence Pertaining to Pinnacle's Interactions with Other Clients."  DENIED.

Defendants seek to exclude evidence that in 2010-2011, two of its other clients— PERSI/CS Capital and Hunt—accused AMS of not disclosing the existence of a risk management fee paid to AMS in the course of administering the MIP.  Defendants primarily object to the evidence on the ground that its probative value is outweighed by the risk of delay, confusion, and unfair prejudice, though Defendants also suggest that the evidence is also improper under Federal Rule of Evidence 404(b).  Defs.' MIL #16, ECF 284.  The Court agrees with Plaintiffs that this

United States District Court
Northern District of California

evidence of other allegations of hidden fees in connection with the MIP is highly probative of a pattern of racketeering activity in connection with Plaintiffs' RICO claim and is not precluded by Rule 404(b).  Any prejudice to Defendants may be mitigated by a limiting instruction and does not overwhelm the probative value of the evidence.  Fed. R. Evid. 403.  Defendants' Motion *in Limine* No. 16 is therefore DENIED.  Defendants may prepare an appropriate limiting instruction if they find it necessary.

**17. Defendants' Motion *in Limine* No. 17 to "Exclude Evidence of 2014 Hunt Transaction."  DENIED.**

This motion is largely moot in light of the Court's ruling on summary judgment.  SJ Order at 47-50.  As will be discussed in connection with Defendants' Motion *in Limine* No. 20, Plaintiffs' expert Louis Dudney will testify to actual fraudulent intent—not constructive fraud—in connection with the Hunt transaction, which is alleged to be a predicate act fraudulent transfer in furtherance of Defendants' racketeering enterprise.  On the record, Plaintiffs confirmed that Mr. Dudney will not testify that the $30 million price of the Hunt transaction was not enough for the transferred assets, only that the manner in which the $30 million was paid did not amount to fair value.  With that understanding, Defendants' Motion *in Limine* No. 17 is DENIED.

**18. Defendants' Motion *in Limine* No. 18 to "Exclude Portions of Plaintiffs' Expert Louis Dudney's Testimony on Work Orders."  DENIED as moot.**

In light of Defendants' acknowledgment that they withdraw this motion and will address their objections to Mr. Dudney's testimony concerning work orders on cross examination, Defendants' Motion *in Limine* No. 18 is DENIED as moot.

**19. Defendants' Motion *in Limine* No. 19 to "Exclude Plaintiffs' Expert Louis Dudney's Testimony on Vendors."  GRANTED.**

In light of the Court's ruling on summary judgment, *see* SJ Order 40-42, 43-44, Defendants' Motion *in Limine* No. 19 is GRANTED.  Plaintiffs shall have leave, on rebuttal, to revisit this ruling with respect to Mr. Dudney's opinion regarding vendor cost savings should Defendants open the door by introducing evidence of the investment value of the PMAs or the tremendous cost of this litigation to suggest Plaintiffs' bad faith or motive.

United States District Court
Northern District of California

**20. Defendants' Motion *in Limine* No. 20 to "Exclude Plaintiffs' Expert Louis Dudney's Testimony on Fraudulent Transfer."  DENIED.**

Defendants seek to exclude Mr. Dudney, Plaintiffs' designated expert, from testifying concerning the 2014 Hunt transaction, which Plaintiffs allege to be fraudulent transfer. Defendants' objection to Mr. Dudney's testimony is twofold: first, that he offers opinions on theory of constructive fraud that is incongruous with Plaintiffs' allegations and therefore substantively irrelevant and second, that his methodology in assessing AMS's insolvency after the transaction is unsound.  Defs.' MIL #20, ECF 294.  The first of these challenges is moot because Plaintiffs have clarified that Mr. Dudney will only opine regarding actual fraudulent intent and have assured the Court that they will not elicit testimony from him regarding constructive fraudulent transfer.  *See* Pls.' Opp. #20 at 2-3, ECF 325.  To the extent insolvency is a badge of fraud probative of fraudulent intent, the Court will permit Mr. Dudney to testify concerning that subject.  As to Defendants' objections to Mr. Dudney's methodology, the Court finds his cash flow and balance sheet analysis sufficiently reliable to reach the jury and that Defendants' arguments go to the weight of the evidence and are better addressed on cross-examination. Finally, as already noted, Mr. Dudney will not offer an opinion that $30 million is not fair value for the assets involved in the Hunt transaction, only that the actual manner of payment was not fair value.  As such, Defendants' Motion *in Limine* No. 20 is DENIED.

**21. Defendants' Motion *in Limine* No. 21 to "Exclude Expert Opinions and Testimony from Nancy P. Watkins."  DENIED.**

Defendants seek to exclude the opinion and testimony of Plaintiffs' expert witness Nancy P. Watkins, who has been designated to testify concerning the annual allocation of costs in Defendants' MIP and to offer the opinion that the allocation was not fair and equitable. Defendants contend that Ms. Watkins's testimony is not relevant because her analysis begins with the assumption that the MIP allocation is "like rate-making" and therefore warrants an actuarial model, which she then developed to approximate the actual allocation that took place.  Defendant further challenges the reliability of Ms. Watkins's model and the information and assumptions that she relied upon in her analysis.  Defs.' MIL #21, ECF 286.

Fundamentally, however, this comes down to a question of relevance.  It is undisputed that Defendants and Lockton did not use an actuarial analysis in their allocation of the MIP costs.  It is not apparent, however, that Ms. Watkins will testify that Lockton *should* have used an actuarial analysis.  Rather, as Plaintiffs argue, she conducted an independent allocation analysis using well-known standards (here, actuarial methods) to compare to the allocation that Lockton actually made to offer her opinion regarding whether the actual allocation was fair.  *See* Pls.' Opp. #21 at 1-3, ECF 328.  Such testimony is relevant and proper to the jury's understanding of the alleged MIP fraud and Defendants' alleged breach of fiduciary duty.  Ms. Watkins is moreover an experienced insurance actuary with thirty years of relevant experience and is qualified to opine regarding the highly relevant issue of the fairness of Lockton's allocation of MIP costs.  To the extent Defendants differ with Ms. Watkins conclusion, that is a subject more appropriately left for cross-examination and rebuttal experts.  Defendants' Motion *in Limine* No. 21 is therefore DENIED.

**22. Defendants' Motion *in Limine* No. 22 to "Exclude Excerpts of Robertson Expert Reports and Preclude Testimony Regarding Same."  GRANTED.**

Defendants seek to exclude portions of the report and testimony of Plaintiffs' expert witness James A. Robertson, who is designated to opine regarding the custom and practices and standard of care in the insurance industry.  Mr. Robertson is unquestionably qualified, but Defendants argue (and the Court agrees) that his report is rife with impermissible opinions wherein he vouches for Plaintiffs' version of the facts, concludes the applicable law and the proper application of that law, infers the mental states of individual actors, and opines on ultimate issues reserved for the factfinder.  *See* Defs.' MIL #22, ECF 288.  Plaintiffs acknowledge these shortcomings in Mr. Robertson's report and have assured the Court that he will testify only to matters within the province of an expert witness and that they will not elicit testimony concerning individual actors' mental states from Mr. Robertson.  As such, the Court GRANTS Defendants' Motion *in Limine* No. 22 with respect to the objectionable opinions in Mr. Robertson's report in the form that they are written.  Mr. Robertson will be allowed to testify concerning the custom and practice in the insurance industry and, upon a proper factual foundation and in the proper form, his opinion concerning Defendants' observance of the standard of care in the industry.  Mr. Robertson

may not testify to matters or offer opinions that are not in his report.

## IV.   LIMITING INSTRUCTIONS

Where the Court has ordered a party to prepare a limiting instruction in connection with the rulings above, that party shall submit the proposed instruction to the Court no later than **one trial day** before the evidence to which the instruction pertains is to be offered at trial.  The parties are encouraged to meet and confer ahead of time to arrive at an agreement on the wording of the instruction.  During trial, the party proposing the limiting instruction shall inform the Court when the instruction is to be read.

**IT IS SO ORDERED.**

Dated: July 30, 2015

BETH LABSON FREEMAN
United States District Judge