1  Marc H. Cohen, Esq. (State Bar No. 168773)
   mcohen@kirkland.com
2  Kirkland & Ellis LLP
   3330 Hillview Avenue
3  Palo Alto, CA 94304
   Telephone: (650) 859-7000
4  Facsimile: (650) 859-7500

5  Jeffrey L. Willian, Esq. (*pro hac vice*)
   Donna M. Welch, Esq. (*pro hac vice*)
6  Kirkland & Ellis LLP
   300 North LaSalle
7  Chicago, IL 60654
   Telephone: (312) 862-2000
8  Facsimile: (312) 862-2200

9  Attorneys for Plaintiffs

10

## UNITED STATES DISTRICT COURT

11

## NORTHERN DISTRICT OF CALIFORNIA

12

## SAN JOSE DIVISION

13

14  MONTEREY BAY MILITARY HOUSING,
    LLC, CLARK PINNACLE MONTEREY BAY      Case No. 5:14-CV-03953 BLF
15  LLC, CLARK MONTEREY PRESIDIO LLC,
    CALIFORNIA MILITARY COMMUNITIES       **PLAINTIFFS' EMERGENCY MOTION**
16  LLC, CLARK PINNACLE CALIFORNIA        **TO ENFORCE BINDING TERM SHEET**
    MILITARY COMMUNITIES LLC and CLARK
17  IRWIN, LLC,                           COURTROOM: 3, Fifth Floor

18              Plaintiffs,               JUDGE: Hon. Beth L. Freeman
          vs.
19  PINNACLE MONTEREY LLC, PINNACLE
    IRWIN LLC, AMERICAN MANAGEMENT
20  SERVICES CALIFORNIA INC., AMERICAN
    MANAGEMENT SERVICES LLC D/B/A
21  PINNACLE, GOODMAN REAL ESTATE,
    INC., GOODMAN FINANCIAL SERVICES,
22  INC., STANLEY HARRELSON and JOHN
    GOODMAN,
23
24              Defendants.

25  AND RELATED CROSS-COMPLAINT:

26  PINNACLE IRWIN, LLC and PINNACLE
    MONTEREY, LLC,
27

28              Plaintiffs,

1

2          vs.

3    CLARK REALTY CAPITAL, L.L.C., CLARK
     PINNACLE MONTEREY BAY LLC, CLARK
4    PINNACLE CALIFORNIA MILITARY
     COMMUNITIES LLC, and DOES 1-25,
5    INCLUSIVE,

6                      Defendants.
7    AMERICAN MANAGEMENT SERVICES
     CALIFORNIA INC. AND AMERICAN
8    MANAGEMENT SERVICES LLC (D/B/A
     PINNACLE),
9
                   Counterclaimants,
10
11   v.

12   MONTEREY BAY MILITARY HOUSING LLC
     AND CALIFORNIA MILITARY
13   COMMUNITIES LLC

14                 Counterdefendants.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

Pls.' Emergency Mot. to Enforce Binding Term Sheet
Monterey Bay Military Housing v. Pinnacle Monterey
CASE NO. 5:14-CV-03953 BLF

On the eve of trial, the parties resolved this and the related Georgia lawsuit, through execution of a Binding Term Sheet. The Binding Term Sheet required Defendants to make two cash payments: the first in 30 days in the amount of $45 million and the second in 6 months in the amount of $39 million. (Ex. 1, Binding Term Sheet ¶ 1) Given the lengthy period of time Defendants were allowed to make these payments, and in light of a history of dissipation of assets, Plaintiffs expressly required Defendants to provide "to the reasonable satisfaction of Clark and the Project Owners full collateral and personally binding, joint and several guarantees of the above payments…" within 14 days. (Id. at ¶ 2) The parties further agreed to "negotiate subsequent agreements to more fully document this agreement." (Id. at ¶ 8) At the very outset, Defendants have breached their initial obligations under the Binding Term Sheet, by refusing to provide true guarantees and full collateral -- much less to the reasonable satisfaction of Clark and the Owners. Indeed, Defendants have refused to answer basic questions about the pledged collateral, including about the value of the pledged assets. They have further provided purported "security" documents that are wholly deficient under Washington law (where the assets are located).

This Court agreed to retain jurisdiction to enforce the terms of the Binding Term Sheet, including "any subsequently executed agreements related to this Binding Term sheet." (Id. at ¶ 9) Plaintiffs thus seek an emergency order requiring Defendants to immediately comply with Paragraphs 2 and 8, by executing satisfactory personally binding guarantees and by pledging full and acceptable collateral pursuant to pledge and security agreements that adequately protect Plaintiffs under applicable law. At this point, it appears that when Defendants executed the Binding Term Sheet that allowed them to avoid trial on the merits, they had no intention of abiding by its terms. Because Defendants' breach of the Binding Term Sheet is so blatant, Defendants must be calculating the Court's full calendar prevents a prompt hearing on this motion.

**A. Legal Standard.**

As the Court agreed and the law provides, courts routinely recognize that a district court maintains the inherent authority to enforce a settlement ending litigation before the court. *TNT Mktg., Inc. v. Agresti*, 796 F.2d 276, 278 (9th Cir. 1986); *Armstrong v. City & Cnty. of San Francisco*, No. C 01-2611 VRW MEJ, 2004 WL 2713068, at *1 (N.D. Cal. June 15, 2004) ("Courts

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

Pls.' Emergency Mot. to Enforce Binding Term Sheet
Monterey Bay Military Housing v. Pinnacle Monterey
Case No. 5:14-CV-03953 BLF

have inherent power to enforce settlement agreements between the parties in pending cases."); *Nash v. UCSF Med. Ctr.*, No. 11-CV-4473 JSC, 2013 WL 4487503, at *1 (N.D. Cal. Aug. 19, 2013) ("A federal court has the equitable power to summarily enforce a settlement reached by the parties in a case pending before it.").

A settlement agreement is governed by ordinary principles of contract law, and therefore the court may order specific performance of the agreement by the breaching party. *TNT Mktg., Inc. v. Agresti*, 796 F.2d at 278 (citing *Vill. of Kaktovik v. Watt*, 689 F.2d 222, 230 (D.C. Cir. 1982) ("The enforceability of settlement agreements is governed by familiar principles of contract law. . . . Upon breach by one party, the other party may obtain damages or specific performance as appropriate."). Here, the Defendants have flouted the clear terms of the Binding Term Sheet and an order requiring specific performance of the term sheet is therefore appropriate. *Ashker v. Sayre*, No. C 05-03759 CW, 2010 WL 476634, at *5 (N.D. Cal. Feb. 4, 2010) (entering order requiring specific performance of settlement agreement after party's breach).

### B.    Defendants Have Breached the Binding Term Sheet.

Within days of the settlement, Plaintiffs sought cooperation in obtaining personally binding joint and several guarantees and full collateral as required by the Binding Term Sheet, providing a form of guarantee and asking for a list of collateral so they could determine its sufficiency in advance of the August 20 deadline to provide such documents to the reasonable satisfaction of Plaintiffs and Clark.  Ex. 2, 8/12/15 D. Welch Email to T. Dutton; Ex. 3, 8/17/15 D. Welch Email to T. Dutton.  Defendants ignored these communications, and on August 18 returned a highly truncated draft guarantee that deleted important provisions.  Ex. 4, 8/18/15 T. Dutton Email to D. Welch. Defendants further stated they intended to openly breach Paragraph 2 of the Binding Term Sheet by refusing to provide collateral for the first payment of $45 million.  *Id.* ("Defendants do not believe that it is necessary to collateralize this $45 million payment.").  Equally troubling, Defendants indicated they would provide three items as collateral for the second payment of $39 million:  (1) 10 million in cash; (2) the PPMS note (which based on discovery relating to the fraudulent transfer had an original face value of $6 million, subject to significant offsets for fraudulent transfer claims that

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

2

Pls.' Emergency Mot. to Enforce Binding Term Sheet
Monterey Bay Military Housing v. Pinnacle Monterey
Case No. 5:14-CV-03953 BLF

1   had already been taken in an unknown amount); and (3) Mr. Goodman's personal residence.[1]   Ex.

2   4, 8/18/15 T. Dutton Email to D. Welch.   Defendants provided no documentation to support the

3   source or value of this claimed collateral.  *Id.*

4          Plaintiffs immediately demanded full collateral for the entire $84 million settlement payment

5   as required, expressed their significant concerns with the collateral that Defendants had proposed

6   pledging for the $39 million second payment, and asked a series of questions regarding the proposed

7   collateral:

8   • Regarding the PPMS note, Plaintiffs sought information about the current amount of the note,
       all payments to date and all agreements regarding the timing of future payments and/or set offs
9       for events including fraudulent transfer claims.

10  • With respect to the significant amount of collateral that appeared to be based on Mr. Goodman's
       residence, Plaintiffs asked for an appraisal of the property (particularly in light of the fact that a
11     residence of this purported value did not appear on the individual financial statements for Mr.
       Goodman produced in the litigation), details regarding any other mortgages or liens on the
12     property, and information regarding whether any other individuals or entities jointly own any
       portion of the property.  Plaintiffs also noted that if Clark and the Owners determined that the
13     personal residence is, in fact, sufficient collateral for some amount of the required payment, they
       would require Mr. Goodman to execute an agreement allowing Plaintiffs to immediately
14     foreclose on the property in the event of non-payment.

15         Plaintiffs also provided revisions to Defendants' form of guarantee, to include several key

16  provisions (including, for example, a provision that would prohibit the guarantor from transferring

17  assets pledged as collateral until the final settlement payment had been made in full).  Ex. 5, 8/19/15

18  D. Welch Email to T. Dutton.  Defendants refused to consider further the terms of the guarantee or

19  to provide any of the information Plaintiffs had requested to enable them to determine the

20  sufficiency of the collateral.  Instead, at 4:04 pm on the August 20 deadline, Defendants provided

21  executed versions of their guarantees (in a form that had been rejected by Clark and the Owners) and

22  executed agreements purporting to pledge collateral that had never been provided to Plaintiffs for

23  review.  Ex. 6, 8/20/15 T. Dutton Email to D. Welch.  This was in blatant breach of Defendants'

24  obligations under Paragraphs 2 and 8 of the Binding Term Sheet and, as discussed below, the

25  guarantees and pledges of collateral are wholly unacceptable.

26  _____

27  [1]   As Plaintiffs noted in communications with Defendants, individual financial statements produced for Mr. Goodman
        in the litigation made no reference to a personal residence, let alone one valued at upwards of $20 million as would
28      have been required to collateralize the full $39 million as required.  Ex. 5, 8/19/15  D. Welch Email to T. Dutton.

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

3

Pls.' Emergency Mot. to Enforce Binding Term Sheet
Monterey Bay Military Housing v. Pinnacle Monterey
Case No. 5:14-CV-03953 BLF

C. **Defendants' Guarantees and Collateral Do Not Provide Reasonable Protection To Plaintiffs And Have Been Rejected By Owners and Clark.**

Contrary to the terms of the Binding Term Sheet, which required the parties to "negotiate" subsequent agreements in good faith, Defendants executed guarantees that deleted certain key representations required by Owners and Clark, including representations that Defendants intended to comply with the Term Sheet and would not transfer the pledged collateral.   Plaintiffs responded that the guarantees as executed were not to their reasonable satisfaction and asked for an explanation for why these critical provisions had been deleted. Ex. 7, 8/20/15 D. Welch Email to T. Dutton. Defendants have ignored the request for an explanation.

Further, again without giving Plaintiffs an opportunity to review the collateral or pledging agreements, Defendants unilaterally executed purported security agreements to pledge in total (a) $40 million in cash; (b) two notes (one provided by PPMS and one by a Hunt entity from a prior sale of military project rights termed the BAF note) and Goodman's stock in GRE, which is again not valued; and (c) real estate consisting of a commercial warehouse and Mr. Goodman's residence. Ex. 6, 8/20/15 T. Dutton Email to D. Welch.   Defendants failed to provide any documentation or representation regarding the fair market value of the pledged collateral.   A detailed review of the documents and collateral provided by Defendants reveals that they are deficient in both value and as a genuine pledge of collateral that can be drawn upon in the event of non-payment. Though Defendants failed to provide support for the value of collateral, Plaintiffs' investigation has revealed that Defendants are potentially misdirecting once again. Based on a review of public records, it appears that the pledged real estate is worth no more than $4 million. Y. French Decl. ¶ 11.  Yet this real estate, along with the PPMS Note (face value of $6 million subject to offsets and current value uncertain), GRE stock (value unknown), and $10 million cash is the only collateral offered to secure the $39 million payment.

**(1)  The "Pledge" of Cash Collateral Is Insufficient Under Washington Law**

Defendants contend that they are pledging $40 million of the $84 million in cash.  However, when Plaintiffs demanded that such cash be either paid immediately or placed into an escrow account to protect Plaintiffs (Ex. 5, 8/19/15 D. Welch Email to T. Dutton), they refused to do so.  As

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

4

Pls.' Emergency Mot. to Enforce Binding Term Sheet
Monterey Bay Military Housing v. Pinnacle Monterey
Case No. 5:14-CV-03953 BLF

Defendants and their counsel surely know, under Washington law (where Defendants purport to be holding the cash), a security interest in cash collateral is not perfected unless the funds are placed in the secured party's "control.' *See* Rev. Code of Wash. § 62A.9A-312(b)(1) ("A security interest in a deposit account may be perfected only by control").   Absent such control, any purported "pledge" of cash collateral does not actually provide a perfected security interest.  *Id.*   Thus, Defendants' purported "pledge" of cash collateral is wholly insufficient, as Plaintiffs have no ability to prevent the dissipation of the cash collateral under Washington law.

### (2)  The Pledge of Unvalued Notes and Securities Are Insufficient

Defendants purport to pledge two Hunt-related notes (PPMS and BAF) without providing any documentation regarding the current value of the notes, payments made on the notes to date, and any provisions or off-sets related to their value.   Plaintiffs also purportedly pledge Mr. Goodman's stock in GRE, again providing no documentation or even representation regarding its value.  Defendants have also refused to provide basic documentation demonstrating that they own the pledged collateral, and have omitted common and necessary representations required to protect Plaintiffs.  For example, the pledge of GRE stock omits standard restrictions on voting the shares in a manner adverse to the secured parties, language to vest the voting rights and rights to receive all payments and dividends solely in the secured parties, and a pledge of any dividends or distributions received by Defendants in contravention of the pledge agreement.  Without such provisions, there is nothing stopping Defendants from dissipating all of the corporate assets and rendering the pledged security worthless.

Moreover, proper UCC-1 financing statements must be filed for pledged notes and stock. *See* Rev. Code of Wash. § 62A.9A-312.  Absent perfected security interests, Plaintiffs "security" is at constant risk of being subordinated to others, if they are not already, and thus becoming worthless as collateral.  *Id*  Critically, in the event any of the parties declare bankruptcy, the bankruptcy trustee would take an interest in the estate that is superior to all unperfected interests.  11 U.S.C. §544.  No reasonable creditor would ever accept such illusory "security."

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

5

Pls.' Emergency Mot. to Enforce Binding Term Sheet
Monterey Bay Military Housing v. Pinnacle Monterey
Case No. 5:14-CV-03953 BLF

### (3)  The Deeds of Trust for Real Property Are Insufficient

Likewise, Defendants' unilaterally executed Deeds of Trust for a warehouse owned by GRE and Mr. Goodman's personal reference are deficient in a number of key respects.  First, in order to perfect an interest in real property, the deeds of trust must be recorded, which Defendants have failed to do.  The Deeds of Trust are also missing important provisions.  One of the pledged properties is a commercial warehouse, but the Deed of Trust contains no environmental indemnity, rendering the purported "collateral" a potential liability.  And, because the Deeds of Trust only purport to secure the Guaranty, and not the actual Binding Term Sheet, Washington Real Estate counsel has advised that Plaintiffs may be unable to secure a deficiency judgment in the event that the collateral is insufficient to cover the $84 million settlement obligations.[2]

### D.  Plaintiffs Seek Immediate Compliance With the Binding Term Sheet.

Plaintiffs require and respectfully request urgent relief.  Every day that passes without receiving any adequate, perfected security interest in full collateral is another day that risks the dissipation or conveyance of Defendants' assets.  Plaintiffs ask the Court to grant Plaintiffs' Emergency Motion and Order Defendants to:

1) Sign the form of guarantee approved by Clark and the Project Owners attached as Exhibit 8;

2)  Provide documentation and representations that reasonably support the value of Defendants' claimed collateral, in the amount of $84 million;

3)  Provide sufficient documentation identifying all parties that have any interest in the pledged collateral whatsoever, including a title commitment and an enforceability opinion for all pledged real estate; and

---

[2]  A guarantor granting a deed of trust to secure its guaranty of a commercial debt shall be subject to a deficiency judgment following a trustee's sale under that deed of trust only for (A) any decrease in the fair value of the property caused by waste to the property committed by the borrower or grantor, respectively, after the deed of trust is granted, and (B) the wrongful retention of any rents, insurance proceeds, or condemnation awards by the borrower or grantor, respectively, that are otherwise owed to the beneficiary.  *See* RCW 61.24.100(6).

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

4)  Execute security agreements and deeds of trust that provide Plaintiffs a perfected security interest in the collateral, in substantially the same form as those compiled as Exhibit 9.

To the extent that Defendants refuse or fail to provide satisfactory documentation of the value and/or satisfactory, perfected security interests in the collateral, Plaintiffs further request an opportunity to take targeted discovery of the guarantors regarding the value and security interest provided by the collateral.

**Conclusion**

For the foregoing reasons Plaintiffs respectfully ask that their Emergency Motion to Enforce Binding Term Sheet be GRANTED.

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

Pls.' Emergency Mot. to Enforce Binding Term Sheet
Monterey Bay Military Housing v. Pinnacle Monterey
Case No. 5:14-CV-03953 BLF

DATED: August 24, 2015

Respectfully submitted,

*/s/ Marc H. Cohen*

Marc H. Cohen, Esq. (State Bar No. 168773)
mcohen@kirkland.com
Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304
Telephone: (650) 859-7000
Facsimile: (650) 859-7500


Jeffrey L. Willian, Esq. (*pro hac vice*)
Donna M. Welch, Esq. (*pro hac vice*)
Kirkland & Ellis LLP
300 N. LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Attorneys for Plaintiffs

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

Pls.' Emergency Mot. to Enforce Binding Term Sheet
Monterey Bay Military Housing v. Pinnacle Monterey
Case No. 5:14-CV-03953 BLF

1

## CERTIFICATE OF SERVICE

2       I HEREBY CERTIFY that on August 24, 2015, a copy of the foregoing document is being

3   electronically filed with the Clerk of the United States District Court of the Northern District of

4   California by using the CM/ECF system, which will send notice of such filing to all counsel of

5   record.

6

7   DATED: August 24, 2015                    KIRKLAND & ELLIS LLP

8                                             Respectfully submitted,

9                                             */s/ Marc H. Cohen*

10                                            Marc H. Cohen, Esq. (State Bar No. 168773)
11                                            KIRKLAND & ELLIS LLP
                                              3330 Hillview Avenue
12                                            Palo Alto, CA 94303
                                              Telephone: (650) 859-7000
13                                            Facsimile: (650) 859-7500

14                                            Jeffrey L. Willian, P.C. (*pro hac vice*)
                                              Donna M. Welch, P.C. (*pro hac vice*)
15                                            KIRKLAND & ELLIS LLP
                                              300 North LaSalle
16                                            Chicago, IL 60654
                                              Telephone: (312) 862-2000
17                                            Facsimile: (312) 862-2200

18

19

20

21

22

23

24

25

26

27

28

Kirkland & Ellis LLP
3330 Hillview Avenue
Palo Alto, CA 94304

Pls.' Emergency Mot. to Enforce Binding Term Sheet
Monterey Bay Military Housing v. Pinnacle Monterey
Case No. 5:14-CV-03953 BLF